**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LILA C. ANDERSEN, successor in
interest to HAROLD J. ANDERSEN,

     Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

     Respondent.

_____

ENERGY FUELS MINING COMPANY
and OLD REPUBLIC INSURANCE
COMPANY,

     Intervenors.

No. 05-9550

---

**APPEAL FROM THE BLACK LUNG BENEFITS REVIEW BOARD**
**(BRB No. 04-0612 BLA)**

---

Stephen D. Harris of Merrill, Anderson, King & Harris, LLC, Colorado Springs,
Colorado, for Petitioner.

Barry H. Joyner, United States Department of Labor, Office of the Solicitor (Howard M.
Radzely, Solicitor of Labor; Allen H. Feldman, Assistant Solicitor; Christian P. Barber,
Counsel for Appellate Litigation, with him on the brief), for Respondent.

W.C. Blanton of Blackwell Sanders Peper Martin, LLP, Kansas City, Missouri, for
Intervenors.

Before **BRISCOE**, **BALDOCK**, and **TYMKOVICH,** Circuit Judges**.**

**BALDOCK**, Circuit Judge.

Petitioner Lila Andersen is the surviving spouse of Harold Andersen, a coal miner. Mr. Andersen worked as a coal miner for 40 years and suffered from Chronic Obstructive Pulmonary Disease (COPD). Prior to his passing, Mr. Andersen applied for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945, (BLBA).[1] According to Mr. Andersen, his COPD was a compensable form of pneumoconiosis arising out of his employment as a coal miner. The Administrative Law Judge (ALJ) denied his claim and the Department of Labor Benefits Review Board (Board) affirmed. Petitioner seeks review from the Board's decision. The overriding issue before us is whether the Board erred in denying Mr. Andersen a statutory rebuttable presumption that his COPD arose out of his coal-mine employment. The Board's decision presents a question of law involving statutory and regulatory interpretation we review de novo. See Mangus v. Director, OWCP, 882 F.2d 1527, 1530 (10th Cir. 1989). In interpreting the BLBA, however, we give "considerable weight" to the Department of Labor's (DOL) construction of the statute it is entrusted to administer, Davis v. Director, OWCP, 936

---

[1] Harold Andersen passed away while this appeal was pending. His surviving spouse remains eligible for Mr. Andersen's benefits under 30 U.S.C. § 932(1). The panel granted an unopposed motion to substitute Lila Andersen as Petitioner in this matter. See Fed. R. App. P. 43(a).

2

F.2d 1111, 1115 (10th Cir. 1991), and "substantial deference" to the agency's reasonable interpretation of its own regulations. Lukman v. Director, OWCP, 896 F.2d 1248, 1251 (10th Cir. 1990). Our jurisdiction arises under 33 U.S.C. § 921(c) (as incorporated into the BLBA by 30 U.S.C. § 932(a)). For the reasons that follow, we affirm.

I.

Congress enacted the BLBA to compensate coal miners who have become totally disabled due to pneumoconiosis arising out of coal-mine employment. See 30 U.S.C. §901. To recover benefits under the BLBA, a claimant must prove, among other things, that he suffers from pneumoconiosis, and that his pneumoconiosis arose out of his coal-mine employment. See 20 C.F.R. §§ 718.201-204; Mangus, 882 F.2d at 1529. The BLBA defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). Notably, the BLBA does not have a provision setting forth the criteria to be used in determining whether a particular lung disease satisfies this definition. Pursuant to Congress' grant of authority to promulgate regulations to implement the provisions of the BLBA, see id. § 936(a), DOL has, consistent with several of our sister circuits, interpreted § 902(b)'s definition of pneumoconiosis to encompass two distinct types of compensable lung diseases: those diseases considered clinical pneumoconiosis and those diseases considered legal pneumoconiosis. See 20 C.F.R. §

3

718.201.[2]

According to the regulations, clinical pneumoconiosis consists of those lung diseases the medical community refers to as pneumoconiosis–"the condition characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure[.]" Id. § 718.201(a)(1). These include, for example, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis. Id. In contrast, legal pneumoconiosis encompasses a broader class of lung diseases that are not pneumoconiosis as the term is used by the medical community. See Eastover Mining Co. v. Williams, 338 F.3d 501, 509 (6th Cir. 2003). Legal pneumoconiosis consists of "*any* chronic lung disease or impairment and its sequelae" including "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2) (emphasis added). A chronic restrictive or obstructive pulmonary disease arises out of coal-mine employment if it is "significantly related to, or substantially aggravated by, dust exposer in coal mine employment." Id. § 718.202(b).

---

[2] In interpreting the BLBA's definition of pneumoconiosis to encompass the two forms of compensable lung diseases, the DOL in 2000 codified an interpretation of the BLBA that many circuits had followed for a number of years. See also Gulf & Western Industries v. Ling, 176 F.3d 226, 231-32 (4th Cir. 1999); Bradberry v. Director, OWCP, 117 F.3d 1361, 1368 (11th Cir. 1997); Labelle Processing Co. v. Swarrow, 72 F.3d 308, 315 (3rd Cir. 1995); Consolidation Coal Co. v. Hage, 908 F.2d 393, 395-96 (8th Cir. 1990); Campbell v. Consolidation Coal Co., 811 F.2d 302, 304 (6th Cir. 1987); Peaboy Coal Co. v. Lowis, 708 F.2d 266, 268 n.4 (7th Cir. 1983).

The BLBA and its implementing regulations establish several presumptions "intended to ease a claimant's burden by allowing an element of the required proof to be presumed from the existence of other rationally-related facts." Bosco v. Twin Pines Coal Co., 892 F.2d 1473, 1475 (10th Cir. 1989). At play in this case is the following presumption: "[i]f a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." 30 U.S.C. § 921(c)(1); 20 C.F.R. § 718.203(b).

## II.

Before addressing Petitioner's argument that Mr. Andersen was entitled to a presumption that his COPD arose out of his coal-mine employment, we must first consider whether Mr. Andersen's COPD constitutes pneumoconiosis as the DOL has interpreted that term. No one disputes that COPD, an obstructive pulmonary disease, is not "clinical pneumoconiosis" as defined under the regulations.[3] Accordingly, Mr. Andersen could only recover benefits under the BLBA if he proved, among other things, that he suffered from legal pneumoconiosis–i.e. "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." Id. § 718.201(a)(2).

The Board denied Mr. Andersen's claim for black lung benefits finding he failed to

---

[3] COPD is a respiratory impairment characterized by chronic bronchitis or emphysema and airflow obstruction. See The Merk Manual of Diagnosis and Therapy 568 (17th ed. 1999).

prove he suffered from legal pneumoconiosis because he did not prove his COPD arose out of coal-mine employment. The Board rejected Mr. Andersen's argument he was entitled to a rebuttable presumption that his COPD was related to coal dust exposure because he proved he worked in a mine for over ten years and was afflicted with COPD. On appeal, Petitioner argues the Board erred in interpreting the definition of legal pneumoconiosis to require a claimant to prove his coal-mine employment caused his lung disease rather than treating the causation requirement as a separate element of proof necessary to establish entitlement to benefits.[4] According to Petitioner, the issue of whether Mr. Andersen's coal-mine employment caused his COPD is a separate element of entitlement that can be met by invoking the rebuttable presumption, and not part of the definition of legal pneumoconiosis. While Petitioner's argument has some logistic appeal, applying our standard of review we cannot say the Board's interpretation of the definition of legal pneumoconiosis was erroneous in light of the DOL's interpretation of the BLBA.

Under the plain language of 20 C.F.R. § 718.201(a)(2), proving that one suffers from an "obstructive pulmonary disease" does not prove that one suffers from legal pneumoconiosis *unless* one is able to show one's obstructive pulmonary disease arose out of coal-mine employment. See Bradberry v. Director, OWCP, 117 F.3d 1361, 1368 (11th

---

[4] Petitioner does not challenge the Board's determination that he failed to prove via credible evidence that his coal-mine employment caused his COPD. Accordingly we do not address this issue.

Cir. 1997); Richardson v. Director, OWCP, 94 F.3d 164, 166 n. 2 (4th Cir. 1996).  Thus, Petitioner incorrectly insists COPD is legal pneumoconiosis.  As noted, legal pneumoconiosis consists of "any chronic lung disease[,]" including an "obstructive pulmonary disease *arising out of coal mine employment*."  20 C.F.R. § 718.201(a)(2) (emphasis added).  Only after a claimant is able to prove that his obstructive pulmonary disease is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment" does a claimant prove he suffers from legal pneumoconiosis.  See id. § 718.201(b); Doris Coal Co. v. Director, OWCP, 938 F.2d 492, 496 (4th Cir. 1991) ("Legal pneumoconiosis, however, is much broader and refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment.") (internal quotations and citation omitted).  Petitioner's interpretation of the statute would allow  "everyone who develops COPD from smoking [to] have legal pneumoconiosis." Williams, 338 F.3d at 515.  The DOL has made clear that "each miner bear[s] the burden of proving that his obstructive lung disease did in fact arise out of his coal mine employment, and not from another source."  65 Fed. Reg. 79938; see also 64 Fed. Reg. 54978 (noting that if a miner fails to demonstrate the existence of clinical pneumoconiosis "he must prove that his lung disease arose out of coal mine employment in order to carry his burden and establish that he has pneumoconiosis").  Accordingly, the Board did not err in interpreting the definition of legal pneumoconiosis to require a claimant to prove his coal-mine employment caused his lung disease.

III.

We now turn to the issue of whether Mr. Andersen, as part of his case to establish his entitlement to benefits, was entitled to a rebuttable presumption his COPD arose out of coal-mine employment. Contrary to Petitioner's contention, we conclude the rebuttable presumption does not extend to claims of legal pneumoconiosis, but rather only to claims of clinical pneumoconiosis. When the BLBA was originally enacted, the BLBA defined the term pneumoconiosis as "a chronic dust disease of the lung arising out of employment in a coal mine." Pub L. 91-173, 83 Stat. 742, § 402(b), *reprinted in* 1969 U.S.C.C.A.N. 823, 880. Under this definition, only those diseases the medical community considered pneumoconiosis were compensable under the BLBA. See, e.g., Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 6-7 (1976) (discussing coal worker's pneumoconiosis). Accordingly, the use of the term pneumoconiosis in the presumption provision referred to pneumoconiosis in its medical sense (*i.e.* clinical pneumoconiosis). In light of new medical evidence that pneumoconiosis was not the only breathing disability miners were susceptible to as a result of their coal-mine employment, Congress broadened the definition of pneumoconiosis to read as it does today. 30 U.S.C. § 902(b); S. Rep. 92-743, *reprinted in* 1972 U.S.C.C.A.N. 2305, 2314 ("The assumption that coal worker's pneumoconiosis per se is the only disease process related to coal mining is not medically justified. Other conditions of the lung, in addition to pneumoconiosis, are commonly encountered among coal miners."). The presumption provision, however, remained intact. Petitioner argues Congress must have intended the presumption

8

provision to apply to both claims of clinical pneumoconiosis and legal pneumoconiosis when it amended the definition of pneumoconiosis to make both types of diseases compensable under the BLBA.

Congress' use of the generic term "pneumoconiosis" in the presumption provision and the DOL's lack of a position as to whether Congress meant legal pneumoconiosis, clinical pneumoconiosis or both, is an obvious source of confusion for Petitioner and others seeking benefits under the BLBA. While Petitioner's argument has some appeal, in light of the regulatory definition of legal pneumoconiosis and the historical evolution of the BLBA, we think Congress used the term "pneumoconiosis" in the presumption provision to refer to clinical pneumoconiosis only. To construe the term any other way leads to an absurd result for a miner alleging he suffers legal pneumoconiosis: a miner with over ten years of coal-mine employment who proved his obstructive lung disease arose out of coal-mine employment, and thus proved he suffers from legal pneumoconiosis, would receive a presumption his pneumoconiosis arose out of coal-mine employment. When applying a statute, we are responsible for interpreting its provisions in a manner that would not render any part of the statute meaningless, redundant, or superfluous. See Bridger Coal Co./Pac. Minerals, Inc. v. Director, OWCP, 927 F.2d 1150, 1153 (10th Cir.1991).

Congress' use of the generic term "pneumoconiosis" in the presumption provision can be harmonized with the statutory scheme if construed to refer only to clinical pneumoconiosis. The presumption does not aid a claimant suffering from COPD prove

9

entitlement to benefits, but it does aid a claimant afflicted with clinical pneumoconiosis. Unlike legal pneumoconiosis, under the regulations a claimant proves the existence of clinical pneumoconiosis by merely establishing that he is afflicted with a disease considered by the medical community as pneumoconiosis. See § 718.202. No proof of causation is required to establish the existence of clinical pneumoconiosis. Once a claimant proves the existence of clinical pneumoconiosis, he then must prove his pneumoconiosis arose out of coal-mine employment either by credible evidence or by invoking the presumption if the claimant has worked in a coal mine for over ten years. See §§ 718.203(b), (c). While both clinical and legal pneumoconiosis must arise out of coal mine employment, the link between the diseases categorized as clinical pneumoconiosis and lengthy coal mine employment is so strong that Congress obviously believed a rational basis exists for the presumption of causation in cases of clinical pneumoconiosis. See Usery, 428 U.S. at 29-30. Unlike COPD, which is a disease of the general population with an overwhelming majority of cases being caused by cigarette smoking and other lung diseases that meet the definition of legal pneumoconiosis, lung diseases the medical community refers to as pneumoconiosis are closely linked to dust exposure. Id., at 28-29; see also The Merk Manual of Diagnosis and Therapy 570 (17th ed. 1999). In general, respiratory and pulmonary impairments are caused by factors other than dust exposure, such as cigarette smoking and air pollution. Id. To require a claimant to prove a causal link between the lung disease and the coal-mine employment in order to establish the presence of legal pneumoconiosis, therefore, makes sense.

10

Because a claimant suffering from COPD must prove his COPD arose out of coal-mine employment to prove he suffers from legal pneumoconiosis, the rebuttable presumption does not extend to cases of COPD; therefore, we deny Petitioner's petition for review and affirm the Board's decision.[5]

---

[5] The panel grants Intervenors' motion to strike from the record a medical article attached to Petitioner's Reply Brief as well as the discussion of the article in the brief.