NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3022
_____

ISPAT/INLAND, INC.,
                                        Petitioner

v.

DIRECTOR OWCP, UNITED STATES DEPARTMENT OF LABOR;
HOWARD CURTIS
_____

On Petition for Review of an Order of the
Benefits Review Board, United States Department of Labor
(BRB No. 09-0356 BLA)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 11, 2011

Before:  SCIRICA, AMBRO and VANASKIE, *Circuit Judges*.

(Filed:  April 6, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Ispat/Inland, Inc. appeals a final judgment of the Department of Labor's Benefits

Review Board awarding benefits to Howard Curtis under the Black Lung Benefits Act,

30 U.S.C. § 901 *et seq.* ("BLBA"). According to Ispat/Inland, the coal mine operator

responsible for paying benefits, the administrative law judge wrongly presumed any

obstructive pulmonary disease in an individual with both a history of coal dust exposure and a longstanding smoking habit will necessarily "arise out of" coal mine employment and therefore qualify as "legal" pneumoconiosis under the statute and regulations. Because neither the ALJ nor the Board employed such a presumption, we will affirm.[1]

I.

Congress enacted BLBA to compensate miners who are totally disabled by pneumoconiosis, which the statute defines as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. §§ 901(a), 902(b). Under the statute, pneumoconiosis may be "clinical" or "legal." The former label refers to the category of diseases recognized by the medical community as pneumoconiosis. 20 C.F.R. § 718.201(a)(1). The latter is defined as "any chronic lung disease or impairment . . . arising out of coal mine employment" including, without limitation, "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). An obstructive pulmonary condition caused by coal-dust exposure satisfies the definition of legal pneumoconiosis. *See id.*; *LaBelle Processing Co. v. Swarrow*, 72 F.3d 308, 315 (3d Cir. 1995).

To recover benefits under BLBA, a claimant must demonstrate (1) he suffers from pneumoconiosis; (2) he is "totally disabled"; and (3) the pneumoconiosis is a substantial

---

[1] The Board upheld the ALJ's award and denied Ispat/Inland's motion for reconsideration. We have jurisdiction under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), which is incorporated by reference in BLBA, 30

2

contributing cause of his total disability. *See* 20 C.F.R. §§ 718.201–204. By definition, legal pneumoconiosis refers to a class of pulmonary impairments arising out of coal mine employment. *See* 30 U.S.C. § 902(b). A claimant, therefore, bears the burden of proof on two distinct causation inquiries — disease causation and disability causation. *See* 20 C.F.R. § 725.103; *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 861 (D.C. Cir. 2002) ("a claimant . . . bears the burden of demonstrating that he meets all of the relevant conditions"). First, to qualify under the statute as an individual afflicted by "legal" pneumoconiosis, a claimant must prove his obstructive pulmonary condition arose out of his coal mine employment. 20 C.F.R. § 718.201(a)(2). Subsequently, he must demonstrate pneumoconiosis is a "substantially contributing cause" of his totally disabling pulmonary impairment. 20 C.F.R. § 718.204(c). Pneumoconiosis is a "substantially contributing cause" of a miner's disability if it (1) "[h]as a material adverse effect on the miner's respiratory or pulmonary condition;" or (2) "[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c).

BLBA and its implementing regulations employ a number of presumptions "intended to ease a claimant's burden by allowing an element of the required proof to be presumed from the existence of other rationally-related facts." *Andersen v. Dir., OWCP*, 455 F.3d 1102, 1104 (10th Cir. 2006) (quotation omitted). In the realm of disease causation, "[i]f a miner who is suffering or suffered from pneumoconiosis was employed

U.S.C. § 932(a).

3

for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment." 30 U.S.C. § 921(c)(1); 20 C.F.R. § 718.203(b).[2] The regulations "do[ ] not . . . create a presumption that all or even more obstructive disease is caused by exposure to coal dust. . . . [E]ach miner bears the burden of proving that *his* obstructive lung disease did in fact arise out of his coal mine employment." *Nat'l Mining Ass'n*, 292 F.3d at 862–63 (internal quotation omitted).

On appeal, Ispat/Inland contests the ALJ's findings concerning legal pneumoconiosis and disability causation. Ispat/Inland argues the ALJ, in according less weight to the testimony of a physician who theorized that the contribution of coal dust exposure to Curtis' pulmonary impairment was "clinically insignificant" in light of his well-documented smoking history, effectively fashioned an irrebuttable presumption in favor of entitlement to benefits under BLBA. That is, by crediting medical testimony ascribing Curtis' lung disease to both coal dust exposure and cigarette smoke over testimony pinning the obstruction solely on cigarette smoke, the ALJ impermissibly facilitated Curtis' efforts to demonstrate disease causation. Ispat/Inland argues this adjudicatory tack leads invariably to the awarding of benefits under BLBA despite the theoretically disproportionate contributions of cigarette inhalation and coal dust exposure

---

[2] The ALJ concluded Curtis was entitled to this presumption. The Tenth Circuit has concluded this presumption applies strictly to claims of clinical pneumoconiosis and does not extend to claims of legal pneumoconiosis. *Andersen*, 455 F.3d at 1105–06. Nevertheless, because a finding of legal pneumoconiosis subsumes a finding of disease causation, the Board reasoned the ALJ's misguided application of the presumption was harmless error. We concur.

to a miner's pulmonary disorder. For the reasons outlined below, Ispat/Inland's argument fails.[3]

## II.

In January 2009, the ALJ awarded Curtis' claim for benefits based on a finding of legal pneumoconiosis. The ALJ found Curtis worked thirteen years in coal mine employment and had smoked "between 50 and 60 [cigarette] pack years." Based on his assessment of eleven x-ray interpretations, the ALJ found the evidence insufficient to establish the presence of clinical pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(1) ("A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis."). However, the ALJ also assessed testimony proffered by five medical witnesses and concluded Curtis had satisfied his burden of establishing legal pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(4) ("A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the

---

[3] We review a Board decision to determine whether an error of law has been made and whether the Board has adhered to its own standard of review. *Lombardy v. Dir., OWCP*, 355 F.3d 211, 213 (3d Cir. 2004). We review questions of law *de novo*, and we note the Board is bound by an ALJ's findings of fact "if they are supported by substantial evidence in the record considered as a whole." *Id.* "Appellate review thus necessarily entails an independent review of the record and a decision as to whether the administrative law judge's findings were supported by substantial evidence." *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 (3d Cir. 2002). "If substantial evidence exists, we must affirm the ALJ's interpretation of the evidence even if we might have interpreted the evidence differently in the first instance." *Balsavage v. Dir., OWCP*, 295 F.3d 390, 395 (3d Cir. 2002) (internal quotation omitted).

miner suffers or suffered from pneumoconiosis as defined in § 718.201. . . . Such a finding shall be supported by a reasoned medical opinion.").

The parties stipulated that Curtis suffers from a totally disabling chronic obstructive pulmonary disease. Thus, as to both disease and disability causation, the unifying question on appeal is whether Curtis demonstrated his condition was caused, in some material part, by his occupational exposure to coal mine dust. On this issue, the testimony of three physicians is germane.[4] Dr. Donald L. Rasmussen, a medical witness whose report was submitted by Curtis, conceded cigarette smoke was likely a more determinative factor in Curtis' obstruction than was coal mine dust but concluded the dust exposure was "significant" and had "contribute[d] in a material way to his disabling lung disease." Dr. John E. Parker, another medical witness whose report was submitted by Curtis, cited a wealth of research attesting to the causal link between coal dust and obstructive lung disease and similarly fixed blame for Curtis' obstruction on both coal dust and tobacco smoke. To the contrary, Dr. Gregory J. Fino, Ispat/Inland's medical witness, placed sole responsibility for the pulmonary condition on cigarette smoke and opined that coal dust exposure was "of no clinical significance" in Curtis' case. He also concluded that, even if Curtis suffered from pneumoconiosis, his disability was caused uniquely by cigarette smoke.

---

[4] The ALJ accorded little weight to the opinions of Drs. Celko and Altmeyer. Because Ispat/Inland has not contested these evaluations, we will devote the bulk of our analysis to the three medical opinions most heavily relied upon by the ALJ.

The ALJ found the testimony of Drs. Rasmussen and Parker more persuasive than the opinion forwarded by Dr. Fino. Specifically, he found Dr. Fino "failed to explain how the literature related to [Curtis'] case" and could not offer a convincing explanation for how he had managed to distinguish the effects of cigarette smoke from the effects of coal dust in this instance. The Board affirmed, holding the ALJ had acted within his discretion in discounting Dr. Fino's opinion and in concomitantly crediting the pneumoconiosis diagnoses offered by Drs. Rasmussen and Parker.

We too conclude the ALJ acted properly in scrutinizing and weighing the competing medical testimony. Under the BLBA's adjudicatory scheme, the ALJ "evaluate[s] the reasoning and credibility" of medical opinions, *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir. 1986), and "has discretion to accord varying weight to physician testimony," *Consolidation Coal Co. v. Kramer*, 305 F.3d 203, 207 n.7 (3d Cir. 2002). At no point did the ALJ or the Board afford Curtis the benefit of a presumption that his obstruction or his total disability arose out of coal dust exposure. Instead, the ALJ assessed the medical evidence regarding the etiology of Curtis' condition and found the diagnoses offered by Drs. Rasmussen and Parker comparatively credible. The ALJ found their opinions — which factored into the equation Curtis' smoking and employment histories — squarely supported by adequate data and sound analysis. Neither witness blindly assumed Curtis suffered from legal pneumoconiosis simply by virtue of his affliction with a chronic pulmonary condition, and the ALJ did not make this inferential leap on the issue of disease causation without first rigorously

7

evaluating the competing testimony. The burden remained on Curtis to demonstrate disease causation, and the ALJ properly determined he had satisfied this burden by presenting medical testimony that weighed in his favor. *See* 20 C.F.R. § 718.202(a)(4).

"Whether a medical opinion is reasoned . . . is a decision that rests ultimately with the ALJ . . . . The ALJ needs only to be persuaded, on the basis of all available evidence, that pneumoconiosis is a contributing cause of the miner's disability." *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 483 (7th Cir. 2001). Here, the ALJ found Dr. Fino's opinion deficient in several respects. Critically, both the ALJ and the Board found Dr. Fino failed to articulate a viable explanation for why the selections from the relevant medical literature upon which he relied were directly applicable to Curtis. Quite clearly, the ALJ did not discredit Dr. Fino's testimony simply because it posited cigarette smoke as the sole underlying cause of Curtis' condition. Indeed, far from overlooking the potentially confounding influence of cigarette smoke in Black Lung cases in which x-ray evidence does not demonstrate the existence of clinical pneumoconiosis, the ALJ prefaced his decision by acknowledging a claimant's cigarette smoking history "is of particular importance because the pulmonary manifestations of smoking are often similar to [those] of coal workers' pneumoconiosis."

Based on the available evidence, the ALJ reasonably concluded coal dust exposure was a significant contributing cause of Curtis' chronic obstructive pulmonary disease, and that Curtis' condition therefore comports with the statutory definition of legal pneumoconiosis. *See* 30 U.S.C. §902(b); 20 C.F.R. § 718.201(a)(2). The ALJ acted

8

within his discretion in crediting the testimony of Drs. Rasmussen and Parker over the testimony of Dr. Fino and in determining Curtis had satisfied each element of entitlement to benefits based on this medical testimony.[5]

### III.

For the foregoing reasons, we will deny the petition for review and affirm the order of the Benefits Review Board.

---

[5] The Board declined to review the ALJ's finding of disability causation under 20 C.F.R. § 718.204(c) because Ispat/Inland had neglected to challenge the issue on appeal. In affirming the ALJ's award of benefits, our reasoning applies with equal force to both disease and disability causation.