FILED
United States Court of Appeals
Tenth Circuit

September 18, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ANTELOPE COAL COMPANY,

Petitioner,

v.

SANDRA J. GODDARD, on behalf of
and widow of Benjamin F. Goddard;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR,

Respondents.

No. 14-9506
(No. 13-0092 BLA)
(Petition for Review)

## ORDER AND JUDGMENT[*]

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

In this case under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945,

Antelope Coal Company petitions for review of awards of miner's benefits to

Benjamin F. Goddard and survivor's benefits to his widow Sandra J. Goddard.  The

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Director of the Office of Workers' Compensation Program elected not to file a brief in this appeal. Exercising jurisdiction under 33 U.S.C. § 921(c), as incorporated by 30 U.S.C. § 932(a), we deny the petition for review.

*Background*

## I.      Introduction

Mr. Goddard was born in 1933. He worked as a warehouse technician at a coal mine and at a uranium mine in the 1970s and 1980s before Antelope employed him to work in its warehouses in 1989. He retired in 2000. His warehouse position exposed him to varying amounts of coal dust, some days light and some days heavy.

In the late 1990s, Mr. Goddard started experiencing respiratory trouble. He was diagnosed with idiopathic pulmonary fibrosis (IPF)—"a disease of unknown cause that is characterized by progressive fibrosis of the lungs," Emp'r Hrg. Exh. 4 at 6—and with a related disease, usual interstitial pneumonitis (UIP). Within about six months of his retirement, he was on oxygen. Mr. Goddard filed for miner's benefits in April 2002. He died in October 2003; his death certificate specified cause of death as IPF. In November 2003, Mrs. Goddard filed for survivor's benefits.

After the Department of Labor initially awarded benefits on both claims, Antelope sought a hearing before an administrative law judge (ALJ). The hearing was held on May 24, 2006. Since then, there have been four ALJ decisions and four appeals to the Department of Labor's Benefits Review Board (Review Board). We discuss those rulings later in this decision.

## II.    Legal Framework

To make sense of the evidence and administrative decisions, it is helpful to understand the legal framework for black lung claims.  "To obtain benefits under the Act, a miner must demonstrate that he satisfies three conditions:  (1) he or she suffers from pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; and (3) the pneumoconiosis is totally disabling." *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1214 (10th Cir. 2009).

"Pneumoconiosis" includes both clinical pneumoconiosis and legal pneumoconiosis.  *See* 20 C.F.R. § 718.201(a).  Clinical pneumoconiosis "consists of those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment."  *Id.* § 718.201(a)(1).  Legal pneumoconiosis is "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," *id.* § 718.201(a)(2), including "any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment," *id.* § 718.201(b).

The regulations list four ways to make a finding of pneumoconiosis.  *See id.* § 718.202(a).  The first is through x-ray evidence, *id.* § 718.202(a)(1), and the second is through biopsy or autopsy evidence, *id.* § 718.202(a)(2).  The third is through

certain presumptions that are inapplicable in this case. *Id.* § 718.202(a)(3). And the fourth is through "a physician, exercising sound medical judgment . . . , find[ing] that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding must be based on objective medical evidence . . . [and] must be supported by a reasoned medical opinion." *Id.* § 718.202(a)(4).

After finding pneumoconiosis, the ALJ must determine whether it "arose at least in part out of coal mine employment." *Id.* § 718.203(a). "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." *Id.* § 718.203(b). This presumption, however, is applicable only to clinical pneumoconiosis, not to legal pneumoconiosis. *See Andersen v. Dir., Office of Workers' Comp. Programs*, 455 F.3d 1102, 1105 (10th Cir. 2006).

Next the ALJ must determine whether the miner is (or was at the time of death) totally disabled due to pneumoconiosis. 20 C.F.R. § 718.204(a). "A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." *Id.* § 718.204(c)(1). Total disability can be established by various evidence: pulmonary function tests, arterial blood gas tests, evidence that the miner has pneumoconiosis and suffers from cor pulmonale with right-side congestive heart failure, or a physician's conclusion

- 4 -

that the miner's respiratory or pulmonary condition prevents or prevented the miner from working. *Id.* § 718.204(b)(2)(i)-(iv).

For survivor's benefits, the claimant must prove the miner had pneumoconiosis that arose out of coal mine employment and the miner's death was due to pneumoconiosis. *Id.* § 718.205(a). Death is considered "due to pneumoconiosis" when "competent medical evidence establishes that pneumoconiosis was the cause of the miner's death" or when "pneumoconiosis was a substantially contributing cause or factor leading to the miner's death," meaning it "hasten[ed] the miner's death." *Id.* § 718.205(b)(1), (2), (6).

## III.    Medical Evidence

Mr. Goddard saw several physicians and submitted to various tests, including x-rays and a lung biopsy. In addition to his treatment records, the parties proffered expert reports and opinions supporting their opposing positions.

Donald Smith, a board-certified pulmonary specialist, diagnosed Mr. Goddard with IPF and treated him until his death. Dr. Smith stated Mr. Goddard was totally incapacitated by his respiratory impairment. He opined that Mr. Goddard did not have "classic coal worker's pneumoconiosis," Emp'r Hrg. Exh. 4 at 8, but it was more likely than not that coal-mine-dust exposure contributed to the development of IPF and Mr. Goddard's death was hastened by it.

Joshua Portnoy and Kevin Brown of National Jewish Medical Center in Denver examined Mr. Goddard and also diagnosed IPF, with features consistent with

UIP. They opined that "his environmental and occupational exposures may potentially cause pulmonary fibrosis with UIP pathology," but in light of the biopsy results, "these etiologies are possible, but unlikely as the cause of his lung disease." 8/31/2001 Report at 2.

Three pathologists reviewed the biopsy. Carlyne Cool of National Jewish Medical Center diagnosed interstitial fibrosis and honeycombing consistent with UIP. According to Drs. Portnoy and Brown, she found no evidence of pneumoconiosis. Anita Stinson diagnosed UIP. Everett Oesterling opined that Mr. Goddard "had minimal anthracotic pigmentation of his lung tissue" and that "[t]here is no evidence of coal worker's pneumoconiosis." Emp'r Hrg. Exh. 1 at 3.

Three board-certified radiologists and certified B-readers of x-rays reviewed various x-rays. Thomas Miller reported "[f]indings consistent with simple pneumoconiosis." Claimant Hrg. Exh. 1 at 1. Michael Alexander reported an impression of coal worker's pneumoconiosis. Jerome Wiot opined that the x-ray he examined was abnormal, but did not show coal worker's pneumoconiosis and instead was more consistent with IPF.

Michelle Bennett, a family practitioner in Wyoming and former medical director of Northern Wyoming Respiratory Care, examined Mr. Goddard for the Office of Coal Worker's Compensation. Dr. Bennett agreed with Dr. Smith's diagnosis of IPF, and stated she would diagnose coal worker's pneumoconiosis based on a chest x-ray, work history, and the progress of the disease. She stated there is

medical evidence that coal dust can cause fibrotic lung disease; she believed coal dust exposure had a material effect on Mr. Goddard's respiratory condition and it was a significantly aggravating factor of his IPF.

Joshua Perper, a board-certified forensic pathologist, reviewed the records and concluded Mr. Goddard suffered "severe coal workers' pneumoconiosis of the interstitial fibrosis type" because of his coal mining work and the disease "resulted in progressive, severe and permanent respiratory disability and ultimately caused and hastened his death in respiratory failure." Claimant Hrg. Exh. 3 at 32.

In contrast, Lawrence Repsher, a board-certified pulmonary specialist, reviewed the records and concluded there was no evidence of coal workers' pneumoconiosis and Mr. Goddard's pulmonary issues were accounted for by the UIP/IPF diagnoses. He rejected the idea that IPF/UIP is connected to work in a coal mine and stated that evidence to the contrary "carr[ies] essentially no weight as far as establishing some causal connection." Emp'r Hrg. Exh. 10 at 17.

David Rosenberg, a board-certified physician specializing in lung disease and pulmonary disorders, reviewed the records and opined that Mr. Goddard's "disability and ultimate death[] were not related in any fashion to past coal dust exposure or the presence of [coal worker's pneumoconiosis]." Emp'r Hrg. Exh. 6 at 6. He also stated that "no causative relationship between coal dust exposure and linear interstitial fibrosis has been proven," and that "pathologically, coal mine dust exposure does not cause linear interstitial fibrosis." *Id.* at 5.

## IV.    Administrative Decisions

### A.    First Agency Decisions

In his first decision, issued on May 3, 2007, the ALJ found both clinical and legal pneumoconiosis.  Evaluating each category of § 718.202(a) evidence, he concluded that x-ray evidence under § 718.202(a)(1) and the weight of the evidence under § 718.202(a)(4) established pneumoconiosis.  Based on the opinions of Drs. Bennett, Smith, and Perper, the ALJ determined that pneumoconiosis was a substantially contributing cause of Mr. Goddard's totally disabling pulmonary impairment and, ultimately, his death.  He therefore granted both miner's and survivor's benefits.

Antelope appealed.  On May 29, 2008, the Review Board affirmed the ALJ's finding of clinical pneumoconiosis based on the x-ray evidence, pursuant to § 718.202(a)(1).  In doing so, the Review Board rejected Antelope's argument that the agency cannot find pneumoconiosis solely on one § 718.202(a) category of evidence.  But the Review Board agreed with Antelope that the ALJ did not adequately explain his finding of legal pneumoconiosis or why he credited the opinions of Drs. Bennett, Smith, and Perper over the opinions of Drs. Repsher and Rosenberg.  Accordingly, the Review Board vacated the ALJ's findings and directed him to "assess the probative value of all relevant medical opinions" and to "consider the physicians' qualifications and determine whether their conclusions are reasoned." 5/29/2008 Rev. Bd. Dec. at 6.

**B.** **Second Agency Decisions**

In his second decision, issued on December 9, 2008, the ALJ again undertook a § 718.202(a)(4) analysis. He credited the opinions of Drs. Bennett and Smith and concluded that "in this case, IPF falls within the definition of [coal worker's pneumoconiosis], meeting the criteria in 20 C.F.R. § 718.202(a)(4)." 12/9/2008 ALJ Dec. at 6. Because pneumoconiosis was demonstrated by evidence under § 718.202(a)(1) and (a)(4), the ALJ concluded that pneumoconiosis was shown. He further found total disability under § 718.204. Thus, he again awarded both miner's and survivor's benefits.

Antelope appealed to the Review Board, which determined on January 8, 2010, that the ALJ had not complied with its remand instructions. In relevant part, the Review Board held the ALJ had failed to adequately discuss and assign weight to the medical opinions under § 718.202(a)(4). Accordingly, the Review Board vacated the decision and remanded the case for further consideration.

**C.** **Third Agency Decisions**

On January 10, 2011, the ALJ issued his third decision. This time, after reviewing the medical evidence, the ALJ concluded under § 718.202(a)(4) that the record did not establish Mr. Goddard had pneumoconiosis. He determined that the lack of evidence under § 718.202(a)(4) outweighed the x-ray evidence under § 718.202(a)(1). Consequently, he denied benefits on both claims.

Mrs. Goddard appealed. On February 29, 2012, the Review Board agreed with her that the ALJ had failed to comply with its instructions, holding that he had not adequately explained his findings or how he considered the conflicting evidence. The Review Board again vacated the decision and remanded for further proceedings, this time before a new ALJ.

## D.      Fourth Agency Decisions

In the fourth ALJ decision, issued on October 31, 2012, the new ALJ started with the § 718.202(a)(4) analysis. He outlined the various physicians' reports and ultimately considered the opinions of Drs. Smith, Oesterling, and Perper to be entitled to the most weight. He afforded Dr. Perper's opinion more weight than Dr. Oesterling's, and, based on the opinions of Drs. Smith and Perper, he found that Mrs. Goddard had established legal pneumoconiosis under § 718.202(a)(4). He then found total disability under § 718.204(b). For the claim to survivor's benefits, he found that Mr. Goddard's death was due to legal pneumoconiosis. He therefore granted both claims for benefits.

On November 27, 2013, the Review Board affirmed both awards. It rejected Antelope's contention that the new ALJ should have made a de novo finding on clinical pneumoconiosis, holding that the new ALJ had discretion to rely on the finding in the first decision, affirmed on review, that clinical pneumoconiosis was shown under § 718.202(a)(1). It also held the ALJ had followed its instructions to reweigh the evidence of legal pneumoconiosis under § 718.202(a)(4) and had

- 10 -

adequately explained why he gave less weight to Antelope's experts and more weight to Dr. Perper's opinion. Addressing Antelope's complaint that the ALJ had not made a finding regarding causation under § 718.204(c), the Review Board stated:

> [A]ny error by the [ALJ] in failing to render a specific finding under 20 C.F.R. §718.204(c) is harmless. The Board's remand order made clear that the central issue for resolution in this case is whether the evidence established that the miner's disabling interstitial fibrosis was due to coal dust exposure, an analysis relevant to both the issues of the existence of legal pneumoconiosis at 20 C.F.R. §718.202(a)(4) and disability causation at 20 C.F.R. §718.204(c). As discussed *supra*, the [ALJ] permissibly credited Dr. Perper's opinion that the miner had disabling interstitial fibrosis caused by coal dust exposure. Because the [ALJ's] analysis of the evidence at 20 C.F.R. §718.202(a)(4) encompassed the issue of disability causation, it is not necessary that we remand the case for a specific finding pursuant to 20 C.F.R. §718.204(c).

11/27/2013 Rev. Bd. Dec. at 7-8 (footnotes and citations omitted). Antelope's petition for review followed.

## *Analysis*

## I. Standard of Review

"For questions of law, we review the Review Board's decision de novo." *Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1341 (10th Cir. 2014). "For questions of fact, we determine whether the Review Board properly concluded that the ALJ's decision was supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted).

- 11 -

**II.      Discussion**

Antelope argues:  (1) the Review Board erred in affirming the finding of pneumoconiosis based on x-ray evidence alone, rather than requiring the ALJ to weigh all relevant evidence of pneumoconiosis together; (2) the fourth ALJ decision is inadequate and not supported by substantial evidence; and (3) the Review Board exceeded its authority in vacating the third ALJ decision because it was based on substantial evidence and consistent with the law.

**A.      Weighing Evidence Together**

Antelope first attacks the agency's finding of pneumoconiosis based solely on x-ray evidence under § 718.202(a)(1).  It urges us to join three other circuits in holding that "although section 718.202(a) enumerates four distinct methods of establishing pneumoconiosis, all types of relevant evidence must be weighed together to determine whether the claimant suffers from the disease."  *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 25 (3d Cir. 1997) (internal quotation marks omitted); *accord Dixie Fuel Co., LLC v. Dir., Office of Workers' Comp. Programs*, 700 F.3d 878, 880 (6th Cir. 2012); *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 209-10 (4th Cir. 2000).

We need not decide this issue in this case, however, because the agency arrived at its finding of legal pneumoconiosis through a comprehensive review and weighing of the medical evidence.  Therefore, it appears that the agency performed the weighing that Antelope seeks.  And in light of the agency's finding of legal

- 12 -

pneumoconiosis, even if the agency erred in finding clinical pneumoconiosis based solely on x-ray evidence, it would not be reversible error unless the determination of legal pneumoconiosis also is reversible error. *See Antelope Coal Co./Rio Tinto Energy Am.*, 743 F.3d at 1349 ("Even if the x-ray had been more readable and had shown no clinical pneumoconiosis, the ALJ's determination of legal pneumoconiosis would stand because legal pneumoconiosis can be found without evidence of clinical pneumoconiosis."). As discussed below, we do not conclude the finding of legal pneumoconiosis was reversible error, so we need not consider whether the agency erred in finding clinical pneumoconiosis based only on x-ray evidence.

### B.     Fourth Agency Decisions

Antelope argues the fourth ALJ decision was insufficient for three reasons. First, Antelope suggests the ALJ inadequately explained his decision. But "[i]f a reviewing court can discern what the ALJ did and why he did it, the duty of explanation is satisfied." *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1022 (10th Cir. 2010) (internal quotation marks omitted). We have had no trouble discerning what the agency did and why it did it; "[b]oth the Board and the ALJ have shown their work," *Energy W. Mining Co.*, 555 F.3d at 1219.

Second, Antelope contends the ALJ failed to resolve disability causation under § 718.204, asserting he did not find that Mrs. Goddard had shown pneumoconiosis to be a material or substantial contributing cause to the totally disabling pulmonary impairment. The Review Board held, however, any error in not making a more

- 13 -

specific § 718.204(c) finding was harmless because the ALJ's analysis under § 718.202(a)(4) also "encompassed the issue of disability causation" under § 718.204(c). 11/27/2013 Rev. Bd. Dec. at 8. Antelope does not take issue with the Review Board's determination of harmless error, and we agree with the Review Board that no remand is required, because the ALJ effectively resolved the issue of disability causation when he found legal pneumoconiosis. *See Andersen*, 455 F.3d at 1105 (stating that a claimant establishes legal pneumoconiosis only by proving that his respiratory condition "is significantly related to, or substantially aggravated by, dust exposure in coal mine employment" (internal quotation marks omitted)).

Third, Antelope asserts the ALJ's analysis of the medical opinions is impermissibly selective and unsupported by substantial evidence. We have reviewed each of Antelope's specific contentions with regard to this argument and conclude that none of them compel us to vacate the agency decision.

"Our task is to determine whether the Board properly concluded that the ALJ's decision was supported by substantial evidence." *Energy W. Mining Co.*, 555 F.3d at 1217 (internal quotation marks omitted). We agree with the Review Board that, at a minimum, Dr. Perper's opinion constitutes substantial evidence to support the decision. In large part, Antelope's arguments are based on disagreements with the ALJ's assessment of the evidence. "However, in deciding whether substantial evidence exists to support the ALJ's decision, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the trier of fact."

- 14 -

*N. Coal Co. v. Dir., Office of Workers' Comp. Programs*, 100 F.3d 871, 873 (10th Cir. 1996) (internal quotation marks omitted).  Further, this record presents a conflict of medical opinions, and "[w]e are especially mindful that the task of weighing conflicting medical evidence is within the sole province of the ALJ and that where medical professionals are in disagreement, the trier of fact is in a unique position to determine credibility and weigh the evidence."  *Energy W. Mining Co.*, 555 F.3d at 1217 (citation and internal quotation marks omitted).

## C.    Vacatur of Third ALJ Decision

Finally, Antelope argues the Review Board should not have vacated the third ALJ decision because that decision was adequately explained and supported by substantial evidence.  Again, we disagree with Antelope's position.  The Review Board did not err in concluding the ALJ failed to comply with its instructions on the second remand and failed to adequately explain his findings.  Particularly, the third ALJ decision neglected to explain why the ALJ credited the opinions against finding pneumoconiosis over the opinions in favor of finding pneumoconiosis.

### *Conclusion*

The petition for review is denied.

Entered for the Court


Bobby R. Baldock
Circuit Judge