UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1302**

CONSOLIDATION COAL COMPANY,

Petitioner,

v.

EVERETT D. GALUSKY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(14-0187-BLA; 11-5535-BLA)

Argued: March 22, 2016                    Decided: May 10, 2016

Before SHEDD, THACKER, and HARRIS, Circuit Judges.

Petition for review denied by unpublished opinion. Judge Harris
wrote the opinion, in which Judge Shedd and Judge Thacker
joined.

**ARGUED**: William Steele Mattingly, JACKSON KELLY PLLC,
Lexington, Kentucky, for Petitioner. Heath M. Long, PAWLOWSKI,
BILONICK & LONG, Ebensburg, Pennsylvania, for Respondent. **ON
BRIEF**: Kevin M. McGuire, Amy Jo Holley, JACKSON KELLY PLLC,
Lexington, Kentucky, for Petitioner.

Unpublished opinions are not binding precedent in this circuit.

PAMELA HARRIS, Circuit Judge:

Consolidation Coal Company ("CONSOL") petitions for review of a decision awarding black lung benefits to Everett Galusky. An administrative law judge ("ALJ") found that Galusky was entitled to rely on the "fifteen-year presumption," a statutory provision that presumes eligibility for benefits if an applicant has worked in coal mines for at least fifteen years and suffers from a totally disabling respiratory or pulmonary impairment. The ALJ then held that CONSOL had failed to rebut that presumption by showing either that Galusky does not have pneumoconiosis — commonly known as black lung disease — or that his pneumoconiosis did not cause his total disability. The Benefits Review Board affirmed the ALJ's decision.

On appeal, CONSOL argues primarily that the ALJ used the wrong standard in considering whether it had disproved the presence of pneumoconiosis, improperly requiring it to "rule out" any connection between Galusky's coal dust exposure and Galusky's condition. We think this reflects a misreading of the record. Because the ALJ did not err by applying an inappropriate standard of proof, and because substantial evidence supports the ALJ's decision, we deny CONSOL's petition for review.

The Black Lung Benefits Act, 30 U.S.C. §§ 901–44, awards benefits to "coal miners who are totally disabled due to pneumoconiosis," popularly known as black lung disease. 30 U.S.C. § 901(a). Under the Act, a miner can prove entitlement to benefits by showing through medical evidence that "he has pneumoconiosis arising from coal mine employment, and that this disease is a substantially contributing cause of [a] totally disabling respiratory or pulmonary impairment." Hobet Mining, LLC v. Epling, 783 F.3d 498, 501 (4th Cir. 2015) (footnote omitted).[1]

For certain miners, Congress has made it easier to show an entitlement to benefits. Id. A claimant with at least fifteen years of underground coal employment and a "totally disabling respiratory or pulmonary impairment," 30 U.S.C. § 921(c)(4), may invoke the Act's "fifteen-year presumption," under which "we presume both prongs of the showing required for benefits eligibility: that the claimant has pneumoconiosis arising from coal mine employment, and that this disease is a substantially

---

[1] The statutory definition of "pneumoconiosis" encompasses not only the diseases clinically known as pneumoconiosis, but also "legal pneumoconiosis," defined as "any chronic lung disease or impairment" "arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2); see 30 U.S.C. § 902(b).

contributing cause of his disability." See Epling, 783 F.3d at 502.

That presumption may be rebutted in two ways. First, a coal mine operator may establish that the claimant does not have pneumoconiosis "arising out of coal mine employment." 20 C.F.R. § 718.305(d)(1)(i); see Epling, 783 F.3d at 502. Under the governing regulations, a lung disease or impairment "arises out of coal mine employment" if it is "significantly related to, or substantially aggravated by," coal dust exposure. 20 C.F.R. § 718.201(b). So to satisfy this first rebuttal method, an operator must prove the converse: that a miner's impairment is not "significantly related to, or substantially aggravated by," the fifteen years or more spent in coal mines.

Second, an employer may show that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1)(ii) (emphasis added). Known as the "rule-out" standard, this burden is a heavy one. It is not enough for an operator to show that pneumoconiosis is a "minor or even an incidental cause" of a miner's disability. W. Va. CWP Fund v. Bender, 782 F.3d 129, 143 (4th Cir. 2015). Instead, an operator must show that the miner's disability is caused exclusively by something other than pneumoconiosis, "rul[ing] out any connection between a miner's

4

pneumoconiosis and his disability." Id. at 135 (emphasis added) (internal quotation marks omitted).

**B.**

Galusky was a coal miner for at least 26 years, last working in coal mines in 1995 for CONSOL.[2] After unsuccessfully applying for black lung benefits about a decade before, Galusky reapplied in 2010, and this time the Department of Labor approved his claim. CONSOL opposed Galusky's claim and requested a hearing in front of an ALJ.

In the proceedings before the ALJ, the parties presented evidence that included medical tests and studies, x-ray readings, and, most critically, the reports and opinions of four physicians: Doctors Andrzej J. Jaworski; Joseph J. Renn, III; Christopher Begley; and Stephen G. Basheda. While all four agreed that Galusky suffered from a totally disabling impairment, only Jaworski diagnosed Galusky with pneumoconiosis. Renn, Begley, and Basheda instead diagnosed Galusky with conditions like pulmonary emphysema, chronic obstructive pulmonary disease, and asthma, and all three attributed Galusky's impairment either entirely or primarily to Galusky's

---

[2] As Galusky's last coal employer, CONSOL is liable for benefits potentially owed to Galusky, a fact that it does not contest. See generally 20 C.F.R. §§ 725.490, 725.495.

5

decades-long smoking habit, rather than his coal mine employment.

After conducting a hearing and reviewing the medical evidence, the ALJ awarded benefits. Because Galusky had worked for more than fifteen years in coal mines and suffered from a totally disabling respiratory impairment, the ALJ invoked the fifteen-year presumption. CONSOL does not dispute that this presumption applies, and so we presume, as did the ALJ, both that Galusky has pneumoconiosis arising from coal mine employment and that his total disability is substantially caused by his pneumoconiosis.

The ALJ went on to find that based on the medical evidence and physician opinions, CONSOL had failed to rebut the presumption. According to the ALJ, CONSOL could not satisfy the first rebuttal method: showing that Galusky did not suffer from legal pneumoconiosis, or a lung impairment "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." J.A. 297 (defining legal pneumoconiosis); see id. at 296 n.23 (same). The ALJ acknowledged that doctors Begley, Basheda, and Renn had not diagnosed Galusky with pneumoconiosis. But neither Begley nor Basheda, the ALJ noted, had been able to "rule out" coal dust as a contributing cause to Galusky's impairment. See J.A. 290 (quoting Begley's deposition testimony that he "could not 'rule

6

out' exposure to coal dust as a contributor"); J.A. 301 (discussing Begley's testimony); J.A. 303 (discussing Basheda's testimony). Moreover, though both Basheda and Renn had diagnosed Galusky with asthma, the ALJ observed, neither had considered the possibility that coal dust exposure could have aggravated that asthma, which might bring it within the definition of legal pneumoconiosis. Finally, the ALJ discredited the opinions of Basheda and Renn on the ground that the doctors had made statements questioning the progressive nature of pneumoconiosis that were inconsistent with the Act and the preamble to its regulations, and, in Basheda's case, for suggesting without record support that most of Galusky's mining work occurred only after certain coal dust controls had been implemented.

The ALJ then determined that CONSOL could not satisfy the second rebuttal method: demonstrating that Galusky's pneumoconiosis did not contribute to his total disability. Citing longstanding Fourth Circuit precedent, the ALJ discredited the disability-causation opinions of the experts who had failed to diagnose pneumoconiosis, contrary to his own determination — Basheda, Renn, and Begley. The ALJ also reiterated his concerns about statements by Basheda and Renn deemed inconsistent with the Act and the preamble to its regulations. Having accorded little weight to these physicians'

7

opinions, the ALJ determined that CONSOL had failed to rebut the presumption that Galusky's pneumoconiosis caused his total disability, and accordingly held that Galusky was entitled to benefits.

On appeal, the Benefits Review Board affirmed the ALJ's decision. As to the first presumption — that Galusky suffers from pneumoconiosis — the Board rejected CONSOL's argument that the ALJ provided invalid reasons for discounting the views of doctors Renn and Basheda. According to the Board, the ALJ acted within his discretion in concluding that both doctors failed to explain why Galusky's many years of coal dust exposure were not an aggravating cause of his asthma. The Board also endorsed the ALJ's rationale for discrediting the views of doctors Renn and Basheda as to the existence of pneumoconiosis. Both doctors, the Board determined, had made statements inconsistent with the principle that pneumoconiosis is a progressive and irreversible disease, as reflected in the Act and the preamble to its regulations; and Basheda's claim that Galusky's work occurred primarily after the imposition of dust-control measures was "factually unsupported by any evidence in the record," J.A. 321. Finally, as to the second presumption — that Galusky's pneumoconiosis is a substantial cause of his total disability — the Board held that the ALJ properly analyzed the question under the rule-out standard, and appropriately discounted the

8

disability-causation views of doctors who had failed to diagnose pneumoconiosis in the first instance. CONSOL timely petitioned this court for review.

## II.

In black lung cases, our review is highly deferential. We ask only "whether substantial evidence supports the factual findings of the ALJ and whether the legal conclusions of the Board and ALJ are rational and consistent with applicable law." Bender, 782 F.3d at 144 (internal quotation marks omitted). We are mindful that "it is for the ALJ, as the trier of fact, to make factual and credibility determinations, and we therefore defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions." Epling, 783 F.3d at 504 (citation and internal quotation marks omitted).

### A.

As described above, an operator may rebut the fifteen-year presumption in one of two ways: (1) by showing that a claimant does not have pneumoconiosis arising out of coal mine employment ("pneumoconiosis rebuttal"), or (2) by showing that even if the claimant does have pneumoconiosis, that disease did not cause his total disability ("disability-causation rebuttal"). See 20 C.F.R. § 718.305(d)(1). Under the first rebuttal prong, the standard of proof requires an operator to show that a miner's

9

respiratory or pulmonary condition is not "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Id. § 718.201. But under the second, the standard of proof is higher: Here, the rule-out standard requires an operator to show that "no part" of a miner's disability is caused by pneumoconiosis. Id. § 718.305(d)(1)(ii); see Bender, 782 F.3d at 141 (describing application of rule-out standard to second rebuttal prong).

Before this court, CONSOL's primary argument is that the ALJ committed legal error by applying the rule-out standard to its efforts to disprove pneumoconiosis, extending the rule-out standard from the second rebuttal prong to the first.[3] We read the ALJ's opinion differently. The regulatory framework here is technical and a bit cumbersome, and the ALJ's opinion is long and complex. Nevertheless, it is clear that the ALJ correctly distinguished the governing standards of proof, applying each to the appropriate inquiry. In the section of his opinion devoted to pneumoconiosis rebuttal, the ALJ required CONSOL to demonstrate the absence of legal pneumoconiosis, properly

---

[3] Before the Board, CONSOL's argument was that the ALJ improperly applied the strict rule-out standard to the second rebuttal prong, and that it should have been permitted to rebut disability causation under a more lenient standard. Our court recently affirmed the regulatory rule-out standard in West Virginia CWP Fund v. Bender, 782 F.3d 129 (4th Cir. 2015), and CONSOL no longer presses that argument.

defined as a lung impairment "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." J.A. 297. In analyzing disability causation, on the other hand, the ALJ expressly invoked the rule-out standard, explaining that an operator "must 'rule out' any causal relationship between a miner's disability and his coal mine employment" under the second rebuttal prong. J.A. 308 (emphasis added). All of that is indisputably correct.

To suggest that the ALJ nevertheless applied the rule-out standard to pneumoconiosis rebuttal, improperly requiring CONSOL to disprove even the slightest connection between Galusky's coal mine employment and his lung impairment, CONSOL points to two references to the phrase "rule out" in the ALJ's discussion of the existence of pneumoconiosis. In the first, the ALJ notes that Begley "could not rule out a coal dust etiology," or cause, for Galusky's lung impairment, J.A. 301, and in the second, that Basheda "could not 100% rule out a coal dust contribution" to Galusky's lung condition, J.A. 303. In context, however, it is apparent that the ALJ is not referring to the so-called rule-out standard of 20 C.F.R. § 718.305(d)(1)(ii), but instead using "rule out" in its everyday sense — precisely as it was used by the two doctors in their depositions, in the very passages from which the ALJ is quoting when he in turn uses the phrase in his opinion. See J.A. 201 (Begley testifying that "we can't rule

11

out that [Galusky's] exposure to coal dust could have contributed" to his lung disease); J.A. 242 (Basheda testifying that "you can never a hundred percent rule out" a different causal factor, "but [Galusky's] medical condition and findings are [very] typical of tobacco use"). The ALJ's allusions to "ruling out," in other words, come directly from the doctors' testimony as to the causes of Galusky's lung disease, and not from the regulatory rule-out standard.

Nor do we detect any substantive error in the ALJ's consideration of the doctors' testimony on this point. It is indeed the case that under the first rebuttal prong, the burden is on the operator to "rule out," colloquially speaking, the possibility that coal mine employment is "significantly related to" or has "substantially aggravated" a lung disease or impairment. 20 C.F.R. § 718.201(b). And while Begley and Basheda opined that Galusky's smoking habit was the "majority," J.A. 246 (Basheda), or "primar[y]," J.A. 202 (Begley), cause of Galusky's lung condition, neither could say that coal dust exposure might not also play a contributing or aggravating part, J.A. 241 (Basheda), J.A. 201 (Begley). "It was within the ALJ's prerogative" to "determine the persuasiveness of [these experts'] testimony," Bender, 782 F.3d at 144, and to take account of the doctors' uncertainty on this point in determining whether CONSOL had met its burden of demonstrating that coal

12

mine employment was not significantly related to and did not substantially aggravate Galusky's lung disease.

**B.**

In the alternative, CONSOL argues that the ALJ and Board erred as a factual matter in assessing the strength of its rebuttal showing. According to CONSOL, substantial evidence does not support the determination that it failed to meet its burden under either of the rebuttal prongs. Again, we disagree.

As to the first rebuttal prong — disproving pneumoconiosis — CONSOL argues that the opinions of doctors Renn and Basheda are sufficient to show that Galusky's lung condition is not significantly related to or substantially aggravated by coal mine employment, pursuant to 20 C.F.R. § 718.201(b). Both Renn and Basheda diagnosed Galusky with a tobacco-induced condition — for Renn, pulmonary emphysema and a severe obstructive ventilatory defect; and for Basheda, severe chronic obstructive pulmonary disease ("COPD") — with an asthma component. According to CONSOL, by tying Galusky's lung impairment to emphysema and COPD arising from tobacco use rather than coal dust, this expert testimony disproves coal mine employment as a significant contributor to Galusky's impairment.

The problem, as both the ALJ and Board noted, is that neither expert explained why the <u>asthma</u> component of Galusky's condition was not aggravated by exposure to coal dust. CONSOL

13

does not dispute that whether coal mine employment substantially exacerbated Galusky's asthma is relevant to its burden on rebuttal. Rather, it argues that the ALJ misread the record, and that its experts in fact did assess whether Galusky's asthma was aggravated by coal dust, and explained why it was not. But as noted above, it is for the ALJ to determine the persuasiveness of expert testimony, see Bender, 782 F.3d at 144, and we cannot say that the ALJ erred in concluding that Renn and Basheda failed to explain whether coal dust exposure could have aggravated Galusky's asthma. CONSOL directs us to deposition passages in which an expert distinguishes Galusky's asthma from pneumoconiosis or from emphysema caused by coal dust, see J.A. 124-25, 127; diagnoses asthma, J.A. 231; or states without discussion that Galusky's conditions are caused by tobacco use rather than coal dust exposure, J.A. 139. Nowhere, however, is there anything that an ALJ would be obliged to treat as a reasoned and persuasive explanation of why Galusky's prolonged exposure to coal dust did not "substantially aggravate[]" the asthma component of his impairment.

We have explained already that in analyzing pneumoconiosis rebuttal, the ALJ was entitled to consider that experts Begley and Basheda were unable to state definitively that coal mine employment, while not in their view the primary cause of Galusky's lung condition, did not play some significant

14

contributing role. And for the reasons given above, the ALJ also was entitled to discount the testimony of Basheda and Renn because they failed to provide a reasoned explanation of whether coal dust exposure might have aggravated Galusky's asthma. Finally, CONSOL does not challenge on appeal the ALJ's decision, affirmed by the Board, to discredit Basheda's opinion because there is no factual support for Basheda's claim that Galusky performed most of his mining work after dust-control measures were imposed. In light of all of those factors, and under our deferential standard of review, we find that substantial evidence supports the determination of the ALJ that CONSOL failed to rebut the fifteen-year presumption by disproving the existence of pneumoconiosis.[4]

As to the second rebuttal prong — showing that "no part" of Galusky's total disability was caused by his pneumoconiosis under 20 C.F.R. § 718.305(d)(1)(ii) — CONSOL offers the same arguments discussed above, contending that the ALJ simply incorporated by reference his flawed analysis of its experts'

---

[4] Accordingly, we need not decide whether the ALJ properly discredited doctors Basheda and Renn on the additional ground that they had made statements questioning the progressive nature of pneumoconiosis that were inconsistent with the Act and the preamble to its regulations. With or without that alternative reason for discounting the opinions of Basheda and Renn, there is substantial record evidence to support the ALJ's determination that CONSOL did not meet its burden under the first rebuttal prong.

testimony regarding the existence of pneumoconiosis. We have addressed those arguments already. And in any event, the ALJ's analysis under this prong rests critically on a different point: Under well-established Fourth Circuit law, an expert's opinion on whether a claimant's disability is caused by pneumoconiosis "can carry little weight" if that expert does not believe the claimant even has pneumoconiosis, contrary to a determination by the ALJ. See J.A. 311 (quoting Toler v. E. Associated Coal Co., 43 F.3d 109, 116 (4th Cir. 1995)). In fact, "opinions that erroneously fail to diagnose pneumoconiosis may not be credited at all, unless an ALJ is able to identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon the predicate misdiagnosis." Epling, 783 F.3d at 505 (internal quotation marks and alterations omitted). Here, there is nothing to suggest that the view of Renn, Basheda, and Begley that pneumoconiosis did not cause Galusky's disability is independent of their view that Galusky does not have pneumoconiosis at all, and CONSOL does not argue otherwise. Accordingly, the ALJ was well within his discretion in assigning little or no weight to these experts' views on disability causation, and the ALJ's determination that CONSOL failed to meet its rebuttal burden is supported by substantial evidence.

16

**III.**

For the foregoing reasons, we deny CONSOL's petition for review.

<u>PETITION FOR REVIEW DENIED</u>