**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CONSOLIDATION COAL COMPANY,

    Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR; KIRK HANNA, Personal
Representative on behalf of the Estate of
Judy K. Noyes,

    Respondents.

No. 16-9524

_____

**Petition for Review from and Order**
**of the Benefits Review Board**
**(Benefits No. 15-0228 BLA)**
_____

Cheryl L. Intravaia, Feirich/Mager/Green/Ryan, Carbondale, Illinois, for Petitioner.

Sean G. Bajkowski, Counsel for Appellate Litigation, U.S. Department of Labor, Office of the Solicitor, Washington, D.C. (M. Patricia Smith, Solicitor of Labor, Maia S. Fisher, Acting Associate Solicitor, and Emily Goldberg-Kraft, Attorney, United States Department of Labor, Office of the Solicitor, Washington, D.C., with him on the brief), for Director, Office of Workers' Compensation Programs, Respondent.

Jared L. Bramwell, Kelly & Bramwell, P.C., Draper, Utah, for Kirk Hanna, Respondent.
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **MORITZ**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.

_____

Consolidation Coal ("Consolidation") seeks review of a decision by the Department of Labor ("DOL") awarding survivor's benefits to Judy Noyes under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944. The administrative law judge ("ALJ") assigned to the case determined that Mrs. Noyes was entitled to a statutory presumption that the death of her husband, James Noyes, resulted from his exposure to coal dust in underground coal mines. The ALJ further concluded that Consolidation failed to rebut that presumption by showing either that Mr. Noyes did not suffer from pneumoconiosis or that pneumoconiosis did not cause his death. In its petition for review, Consolidation argues that the ALJ erred in retroactively applying the rebuttal standard from DOL's revised regulations to Mrs. Noyes' claim for benefits. Further, the company contends that the ALJ's determination that Consolidation failed to meet its burden of rebuttal is not supported by substantial evidence.

We hold that the ALJ permissibly applied the rebuttal standard from the revised regulations to Mrs. Noyes' claim. The statutory presumption under 30 U.S.C. § 921(c)(4) encompasses both clinical and legal pneumoconiosis. And the rebuttal standard set forth in 20 C.F.R. § 718.305(d)(2)(ii), which requires an employer to effectively "rule out" any causal connection between pneumoconiosis and the miner's death, is consistent with the requirements of the Administrative Procedure Act ("APA") and the purposes underlying the BLBA. That standard may further be applied retrospectively to claims, like Mrs. Noyes', that were filed prior to the effective date of the revised regulations.

2

However, we agree with Consolidation that the ALJ incorrectly stated the revised rebuttal standard in analyzing Mrs. Noyes' claim. Exercising jurisdiction under 33 U.S.C. § 921(c) and 30 U.S.C. § 932(a), we grant Consolidation's petition for review and remand for further proceedings.

**I**

**A**

The BLBA provides benefits to coal miners and their surviving dependents for death or disability due to certain respiratory diseases known as "pneumoconiosis" arising out of coal-mine employment. 33 U.S.C. § 901. There are two types of pneumoconiosis under the BLBA: "clinical" and "legal." 20 C.F.R. § 718.201(a). Clinical pneumoconiosis refers to a group of diseases that are "recognized by the medical community as pneumoconiosis" and "characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." § 718.201(a)(1). Legal pneumoconiosis, in contrast, "encompasses a broader class of lung diseases that" do not all constitute "pneumoconiosis as the term is used by the medical community." Andersen v. Dir., OWCP, 455 F.3d 1102, 1104 (10th Cir. 2006). Legal pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment," including "any chronic restrictive or obstructive pulmonary disease" arising out of such employment. § 718.201(a)(2). A disease "aris[es] out of coal mine employment" if it is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." § 718.201(b).

3

An individual claiming survivor's benefits under the BLBA must generally show that: (1) the miner had pneumoconiosis; (2) the miner's pneumoconiosis arose out of coal-mine employment; and (3) the miner's death was due to pneumoconiosis. § 718.205(a). Congress has enacted various presumptions intended to ease a claimant's burden of establishing entitlement to benefits. See generally 30 U.S.C. § 921(c). Under § 921(c)(4), a survivor is entitled to a "rebuttable presumption that . . . [a miner's] death was due to pneumoconiosis" if the "miner was employed for fifteen years or more in one or more underground coal mines" and "evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment." Id.

This fifteen-year presumption was created in 1972. See Black Lung Benefits Act of 1972, Pub. L. No. 92-303, § 4(c), 86 Stat. 150, 154. It was repealed in 1981. See Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, § 202(b)(1), 95 Stat. 1635, 1643. In 2010, however, Congress revived the presumption as to all claims filed after January 1, 2005, and pending on or after March 23, 2010. See Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556(a), (c), 124 Stat. 119, 260 (2010). DOL subsequently issued a regulation providing that a party opposing a survivor's claim may rebut the presumption by establishing that the miner did not have either legal pneumoconiosis or clinical pneumoconiosis arising out of coal-mine employment, or by demonstrating that "no part of the miner's death was caused by pneumoconiosis." § 718.305(d)(2). Although this new regulation went into effect on October 25, 2013, see Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act, 78

4

Fed. Reg. 59,102, 59,102 (Sept. 25, 2013), it applies to all claims covered by the statutory amendment. § 718.305(a).

**B**

Between 1976 and 2004, Mr. Noyes worked as a foreman supervisor, mine manager, and mine superintendent for three different coal mining operations in Utah, totaling twenty-two years of coal-mine employment. Mr. Noyes was also a long-time smoker. He died on February 11, 2008, after a prolonged battle with various respiratory conditions, including emphysema/chronic obstructive pulmonary disease ("COPD"), pneumonia, and lung cancer.

In 2008, Mrs. Noyes filed an application for survivor's benefits under the BLBA.[1] Her claim was initially denied on September 3, 2009. While her administrative appeal was pending before DOL's Office of Administrative Law Judges, Congress restored the fifteen-year presumption found in § 921(c)(4). See § 1556(a), (c), 124 Stat. at 260. The ALJ, Richard Malamphy, denied Consolidation's request to remand the case to the District Director for the development of additional evidence in response to the restored presumption. ALJ Malamphy concluded that a remand was unnecessary because his review was de novo and the parties would have the opportunity to submit new evidence regarding the statutory change.

Following a formal hearing, ALJ Malamphy denied Mrs. Noyes' application for benefits, concluding she had failed to establish that pneumoconiosis was a substantially

---

[1] Mrs. Noyes passed away after filing her claim. Kirk Hanna, the personal representative of her estate, is the respondent.

5

contributing cause or factor in her husband's death. DOL's Benefits Review Board ("BRB") vacated the decision and remanded for consideration of whether Mrs. Noyes was entitled to invoke the fifteen-year presumption under § 921(c)(4). In a new order, ALJ Malamphy determined that the presumption applied and had not been rebutted. He consequently awarded benefits to Mrs. Noyes. Consolidation appealed, and the BRB vacated the ALJ's decision in part for failure to give Consolidation an opportunity to disprove the existence of legal pneumoconiosis before discrediting the employer's rebuttal evidence. The case was remanded to a new ALJ, Paul Johnson, who awarded benefits. Applying the fifteen-year presumption and the rebuttal standard under § 718.305(d), ALJ Johnson determined that Consolidation had failed to rebut the presumption of death due to pneumoconiosis. The BRB affirmed. Consolidation filed a timely petition for review with this court.

## II

Consolidation raises several legal challenges to the BRB's decision. We review the BRB's resolution of legal questions de novo. Antelope Coal Co./Rio Tinto Energy Am. v. Goodin, 743 F.3d 1331, 1342 (10th Cir. 2014). In conducting this review, "[w]e give no deference to the [BRB's] interpretation" but accord "considerable weight to [DOL's] construction of the statute it is entrusted to administer and substantial deference to the agency's reasonable interpretation of its own regulations, unless such interpretation is plainly erroneous or inconsistent with the regulation." Id. (quotations, citations, and alteration omitted).

6

**A**

Consolidation first argues that § 718.305(d) constitutes an impermissible construction of the BLBA. With respect to claims for survivor's benefits under the Act, that regulation provides that a company may rebut the fifteen-year presumption by:

> (i) Establishing both that the miner did not have:
> (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and
> (B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment . . . ; or
> (ii) Establishing that no part of the miner's death was caused by pneumoconiosis as defined in § 718.201.

§ 718 .305(d)(2). Consolidation contends that the fifteen-year presumption applies only to clinical pneumoconiosis and thus the regulation impermissibly requires a showing that the miner did not have legal pneumoconiosis. We disagree.

Section 921(c)(4) creates a rebuttable presumption that a "miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis" if certain requirements are met. Id. Although "pneumoconiosis" was originally understood to encompass only those diseases recognized as pneumoconiosis by the medical community, the definition was broadened in 1978. Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, § 2(b), 92 Stat. 95, 95 (1978); see also Andersen, 455 F.3d at 1106. The BLBA now defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

7

Following this statutory amendment, numerous circuits recognized that the revised definition encompasses both legal and clinical pneumoconiosis. See, e.g., Gulf & W. Indus. v. Ling, 176 F.3d 226, 231-32 & n.12 (4th Cir. 1999); Bradberry v. Dir., OWCP, 117 F.3d 1361, 1368 (11th Cir. 1997); Consolidation Coal Co. v. Hage, 908 F.2d 393, 395-96 (8th Cir. 1990). And in 2000, DOL promulgated regulations expressly codifying this interpretation. See § 718.201(a); Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79,920, 79,937 (Dec. 20, 2000) (explaining that regulation was intended to "conform . . . to the terminology uniformly adopted by the courts to distinguish between the two forms of lung disease compensable under the statute: pneumoconiosis, as that disease is defined by the medical community, and any chronic lung disease arising out of coal mine employment"). There appears to be no dispute that the term pneumoconiosis is generally used in the statute to refer to both clinical and legal pneumoconiosis. See, e.g., § 921(a) (providing for "payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis").

Thus, for purposes of the BLBA, "pneumoconiosis" has been consistently defined—statutorily, judicially, and administratively—to include a wide range of respiratory and pulmonary conditions arising out of coal-mine employment that do not all constitute pneumoconiosis as the term is used by the medical community. "Under settled canons of statutory construction, we presume that identical terms in the same statute have the same meaning." United States v. Richards, 87 F.3d 1152, 1157 (10th Cir. 1996).

8

Accordingly, we must presume that the BLBA's broad definition of "pneumoconiosis" also applies to the fifteen-year presumption contained in § 921(c)(4).

Consolidation argues that our decision in Andersen mandates a contrary conclusion. There, we held that a different presumption under § 921(c)(1) extends only to clinical pneumoconiosis, despite the canon of consistent usage. Andersen, 455 F.3d at 1106. However, we reached that conclusion only because reading the particular language of that subsection to include legal pneumoconiosis would create "an absurd result." Id. Section 921(c)(1) provides: "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." Id. As we noted in Andersen, this presumption is helpful to a claimant with clinical pneumoconiosis, who is only required to show "that he is afflicted with a disease considered by the medical community as pneumoconiosis." 455 F.3d at 1106. The presumption supplies a causal link between clinical pneumoconiosis and coal-mine employment, which is a prerequisite to obtaining benefits. Id. In contrast, the provision is redundant as applied to legal pneumoconiosis. Only those lung diseases "arising out of coal mine employment" qualify as legal pneumoconiosis. § 718.201(a)(2). Thus, in the context of these claims, § 921(c)(1) would provide that "a miner with over ten years of coal-mine employment who proved his obstructive lung disease arose out of coal-mine employment, and thus proved he suffers from legal pneumoconiosis, would receive a presumption his pneumoconiosis arose out of coal-mine employment." Andersen, 455 F.3d at 1106.

9

Our holding in <u>Andersen</u> was required to avoid this circularity. But there is no circularity with respect to § 921(c)(4), which establishes that a miner who worked for fifteen years in underground coal mines and had a totally disabling respiratory or pulmonary impairment is presumed to have died as the result of pneumoconiosis. <u>Id.</u> In contrast to § 921(c)(1), this provision creates no redundancy or overlap with the definition of legal pneumoconiosis. Accordingly, we do not see any reason to depart from the general, inclusive definition of pneumoconiosis employed throughout the BLBA. <u>See</u> <u>Andersen</u>, 455 F.3d at 1103-04 & n.2 (recognizing that the term "pneumoconiosis" has generally been interpreted to include both clinical and legal pneumoconiosis).

Our conclusion accords with decisions by this court and our sibling circuits. Although they have not directly addressed the issue presented in this case, several decisions have applied the fifteen-year presumption to legal pneumoconiosis. <u>See, e.g.</u>, <u>Antelope Coal Co.</u>, 743 F.3d at 1345-46 (holding substantial evidence supported ALJ's finding that employer failed to rebut presumption that miner suffered from legal pneumoconiosis); <u>Big Branch Res., Inc. v. Ogle</u>, 737 F.3d 1063, 1074 (6th Cir. 2013) (same); <u>Consolidation Coal Co., v. Dir., OWCP</u>, 721 F.3d 789, 795-96 (7th Cir. 2013) (same). Moreover, the only case the parties cite explicitly interpreting the meaning of "pneumoconiosis" under § 921(c)(4) concluded that the 15-year presumption extends to claims of legal pneumoconiosis. <u>See</u> <u>Barber v. Dir., OWCP</u>, 43 F.3d 899, 900-01 (4th Cir. 1995).

10

Congress revived the fifteen-year presumption in 2010 against the backdrop of

Barber and DOL regulations defining "pneumoconiosis" to include both clinical and legal

definitions. We presume that Congress was aware of these interpretations of the BLBA.

See Lorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of

an administrative or judicial interpretation of a statute and to adopt that interpretation

when it re-enacts a statute without change."); see also W. Va. CWP Fund v. Bender, 782

F.3d 129, 140 (4th Cir. 2015) (assuming that Congress intended to retain prior

administrative standards when it reenacted the statutory presumption in 2010).[2]

---

[2] Consolidation argues that the fifteen-year presumption is predicated on the close causal connection between clinical pneumoconiosis and coal-mine employment, and that such a connection is lacking with respect to legal pneumoconiosis. It relies on two studies concerning the prevalence of pneumoconiosis among coal miners.

The first study, which is cited in the Appendix to the House Report on the 1978 amendments to the BLBA, showed that 88% of coal miners with more than fifteen years of underground mining employment had coal workers' pneumoconiosis. H. Rep. 95-151, at 31 (1977), as reprinted in 1978 U.S.C.C.A.N. 237, 267. Consolidation claims that the fifteen-year presumption was "based on" this finding. Yet the presumption was enacted nearly six years prior to issuance of the cited House Report. See Black Lung Benefits Act of 1972, § 411(c)(4), 86 Stat. at 154. Consolidation does not cite any evidence suggesting that this particular study was considered prior to that enactment. See Bruesewitz v. Wyeth LLC, 562 U.S. 223, 242 (2011) (noting that "post-enactment legislative history by definition could have had no effect on the congressional vote" (quotation omitted)).

The second study cited by Consolidation indicates that only 7.7% of non-smoking miners with high coal-dust exposure develop severe respiratory obstruction. See Regulations Implementing the Federal Coal Mine Health and Safety Act, as Amended, 65 Fed. Reg. at 79,940. Consolidation argues that this lower percentage cannot support a legal presumption of total disability or death due to legal pneumoconiosis. We fail to see how this study sheds light on Congress' intent as to the fifteen-year presumption. But in any event, the study is inapposite. It reflects the incidence of respiratory impairment among all miners, healthy or unhealthy. The fifteen-year presumption requires a claimant to demonstrate that he is totally disabled due to a respiratory condition, § 921(c)(4), and thus miners who successfully invoke

11

To the extent there is any remaining ambiguity as to whether the fifteen-year presumption applies to both clinical and legal pneumoconiosis, we must defer to DOL's reasonable interpretation of the statute. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984); Andersen, 455 F.3d at 1103 (recognizing we give "considerable weight" to DOL's interpretation of the BLBA (quotation omitted)). Based on the foregoing analysis, we conclude that the BRB permissibly applied the fifteen-year presumption to legal pneumoconiosis.

**B**

Consolidation argues that even if the fifteen-year presumption applies to legal pneumoconiosis, the rebuttal standard under § 718.305(d) violates the APA by shifting the burden of persuasion to the party opposing entitlement. The APA states that, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U.S.C. § 556(d).[3] The APA applies to adjudications under the BLBA, unless regulations of the Secretary provide otherwise. 30 U.S.C. § 932(a) (incorporating 33 U.S.C. § 919(d), which applies the APA to claim adjudications "except as otherwise provided . . . by regulations of the Secretary"); Greenwich Collieries, 512 U.S. at 271. Accordingly, "[t]he burden of proof mandated by the APA is a default rule that applies in the BLBA context only in the absence of an express statutory or regulatory provision to the contrary." Nat'l Mining Ass'n v. Chao, 160 F. Supp. 2d 47, 70 (D.D.C. 2001), rev'd

---

the presumption have already shown that they fall within the class of miners with significant pulmonary dysfunction.

[3] "The phrase "burden of proof" under § 556(d) refers to the burden of persuasion. Dir., OWCP v. Greenwich Collieries, 512 U.S. 267, 275-76 (1994).

12

in part on other grounds, Nat'l Mining Ass'n v. Dep't of Labor, 292 F.3d 849 (D.C. Cir. 2002).

We conclude that the BLBA shifts the burden of proof by statute and thus § 556(d) does not apply.  Section 921(c)(4) provides that if a miner had a totally disabling respiratory impairment after fifteen years of mine work, "there shall be a rebuttable presumption . . . that his death was due to pneumoconiosis."  Id.  The provision further states that this presumption may be rebutted "only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine"  Id.  As we recognized in Bosco v. Twin Pines Coal Co., 892 F.2d 1473 (10th Cir. 1989), the statute "thus shifts the burden to defendants to establish the lack of pneumoconiosis and/or a connection with mine work."  Id. at 1481.  Other circuits have similarly stated that a claimant's successful invocation of the fifteen-year presumption shifts the burdens of production and persuasion to the employer.  See, e.g., Morrison v. Tenn. Consol. Coal Co., 644 F.3d 473, 479 (6th Cir. 2011) ("Under the [Patient Protection and Affordable Care Act], which revives the 15-year presumption, the burden of production and persuasion lies on the employer . . . to rebut the presumption of disability due to pneumoconiosis."); Blakley v. Amax Coal Co., 54 F.3d 1313, 1320 (7th Cir. 1995) ("The burden of proof lies on the employer to rebut the [fifteen-year] presumption."); U.S. Steel Corp. v. Gray, 588 F.2d 1022, 1027-28 (5th Cir. 1979) (explaining that once the fifteen-year presumption is triggered, "[t]he statute shifts to the Secretary or to the mine operator the burden . . . to prove by a preponderance of evidence that the claimant does not suffer

13

pneumoconiosis . . . or that the impairment is not connected with his employment in the mines").

Consolidation's citation to Greenwich Collieries does not alter our conclusion. There, the Supreme Court held that DOL's "true doubt" rule, which provided that a benefits claimant would win if the evidence was in equipoise, violated the APA by shifting the burden of persuasion to the party opposing entitlement. Greenwich Collieries, 512 U.S. at 281. But DOL failed to identify a statute authorizing such burden shifting and accordingly lacked a legal basis for departing from the default rule under the APA. In this case, however, § 921(c)(4) shifts the burden at issue; thus, the default burden set forth in § 556(d) does not apply.

C

Consolidation also contends that the "rule-out" standard contained in § 718.305(d)(2)(ii) is impermissibly high. Under that provision, an employer may rebut the fifteen-year presumption by "[e]stablishing that no part of the miner's death was caused by pneumoconiosis." § 718.305(d)(2)(ii). In other words, an employer must rule out any relationship between pneumoconiosis and the miner's death. See Antelope Coal Co., 743 F.3d at 1337 (discussing rule-out standard for miner claims).

As we noted in Antelope Coal Co., our court previously applied a rule-out standard to a similar presumption of pneumoconiosis triggered by proof of total disability and ten years' coal-mine employment. See id. at 1336 (citing Rosebud Coal Sales Co. v. Weigand, 831 F.2d 926, 928-29 (10th Cir.1987)). To rebut that presumption, employers were required to show that "total disability or death of the miner did not arise in whole or

14

in part out of coal mine employment." Rosebud Coal Sales Co., 831 F.2d at 928 (quoting 20 C.F.R. § 727.203(b)(3) (1987)).  In Rosebud Coal, we rejected the argument that this standard only required an employer to show that disability or death did not arise in "significant part" from coal-mine employment.  Id.  We reasoned that such an interpretation was "wholly at odds with the decisions rendered by six courts of appeals, including this court, which apply Section 727.203(b)(3) as written, requiring that any relationship between the disability and coal employment be ruled out."  Id.  Those decisions, which we cited in Rosebud Coal, upheld the "rule-out" standard as a permissible construction of the BLBA.  See, e.g., Carozza v. U.S. Steel Corp., 727 F.2d 74, 78 (3rd Cir. 1984); Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123-24 (4th Cir. 1984); Gibas v. Saginaw Mining Co., 748 F.2d 1112, 1120 (6th Cir. 1984); Ala. By-Products Corp. v. Killingsworth, 733 F.2d 1511, 1516 n.10 (11th Cir. 1984).

Two of our sibling circuits have likewise concluded that the rule-out standard in the current regulations is consistent with the BLBA.  Relying on its prior decision in Massey, the Fourth Circuit held that "the rule-out standard set forth in Section 718.305(d) is a reasonable exercise of the agency's authority . . . and lawfully applies to coal mine operators."  Bender, 782 F.3d at 143.  Specifically, the court noted that the alternative standard urged by employers, under which they would only have to show that pneumoconiosis was not a "substantially contributing cause" of  a miner's death or disability, "effectively would nullify the statutory presumption for coal miners . . . whom Congress intended to assist."  Id. at 141.  That "standard would track, in the negative, the evidentiary burden placed on a miner who has not qualified for the statutory

15

presumption." Id. Thus, "a miner entitled to the statutory presumption nevertheless would be placed back at square one, forced to prove the substantial impact of pneumoconiosis on his disability, which is the very situation that Congress intended to eliminate in enacting the presumption." Id. at 141-42 (quotations omitted).

The Third Circuit recently ruled in accord. See Helen Mining Co, v. Elliot, ___ F.3d ___, 2017 WL 2562585 (3d Cir. June 14, 2017). It upheld the rule-out standard as "not merely . . . a reasonable construction of an ambiguous statute, but as the proper construction of the statute as Congress intended it." Id. at *8. Congress crafted the fifteen-year presumption because it "had become dissatisfied with the increasing backlog of unadjudicated claims and the relatively high rate of claim denials under the original Act, and it sought to give preference to those miners most at risk for disease because of their long-term coal dust exposure." Id. (quotation, citation, and alteration omitted). According to the court, "[p]lacing a heightened burden on the party seeking to overcome the presumption" responds to these concerns and is thus a "permissible exercise of the Secretary's rulemaking power." Id. at *8-9.

We are persuaded by the foregoing analyses. The rule-out standard contained in § 718.305(d)(2) is consistent with both Congress' intent in enacting the fifteen-year presumption and the broad remedial purposes of the BLBA. See Bridger Coal Co. v. Dir., OWCP, 669 F.3d 1183, 1190 (10th Cir. 2012) (because the BLBA "is intended to be remedial in nature, . . . doubts should be resolved in favor of the disabled miner or his or her survivors"). We agree with the Fourth Circuit that the alternative interpretation proposed by Consolidation, which mirrors the standard for claims not subject to the

16

fifteen-year presumption by utilizing a significant or substantial factor test, would undermine Congress' intent in passing § 921(c)(4). See Bender, 782 F.3d at 141.

**D**

Consolidation lastly asserts that the retroactive application of § 718.305(d)(2) violates its right to due process. The revised regulations went into effect on October 25, 2013, nearly five years after Mrs. Noyes filed her claim for benefits; however, they govern all claims filed after January 1, 2005, and pending on or after March 23, 2010. § 718.305(a).

In Antelope Coal Co., we upheld this retrospective application of the new rebuttal standard contained in § 718.305(d)(1). Antelope Coal Co., 743 F.3d at 1342. As we explained, a revised regulation that is "substantively consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue," may be applied to pending cases. Id. (quotation omitted). After concluding that the revisions to § 718.305(d)(1) satisfied this requirement, we upheld the ALJ's application of the rule-out standard in that provision to a miner's claim for benefits, which, like Mrs. Noyes', was filed prior to the effective date of the revised regulations. Antelope Coal Co., 743 F.3d at 1337, 1346. Although Consolidation challenges the retroactive application of subsection (d)(2) rather than (d)(1), the two provisions are nearly identical and implement the same section—§ 921(c)(4)—of the BLBA. Compare § 718.305(d)(1) (providing that party opposing miner's claim for benefits may rebut presumption by establishing the miner did not have legal or clinical pneumoconiosis or "that no part of the miner's respiratory or pulmonary total disability was caused by

17

pneumoconiosis"), with § 718.305(d)(2) (providing that party opposing survivor's claim for benefits may rebut presumption by establishing the miner did not have legal or clinical pneumoconiosis or "that no part of the miner's death was caused by pneumoconiosis"). Our decision in Antelope Coal Co. therefore controls the analysis in this case. We hold accordingly that § 718.305(d)(2) may be applied retrospectively to benefits claims that were filed before the regulation's effective date.[4]

### III

Although we reject Consolidation's constitutional and statutory arguments, we are persuaded by its contention that the ALJ incorrectly stated the revised rebuttal standard in analyzing Mrs. Noyes' claim. As noted above, there are two methods for rebutting the fifteen-year presumption. Under the first, an employer must demonstrate that the miner did not have either legal pneumoconiosis or clinical pneumoconiosis arising out of coal-mine employment. § 718.305(d)(2)(i). Under the second, an employer must establish "that no part of the miner's death was caused by pneumoconiosis." § 718.305(d)(2)(ii).

As DOL acknowledges in its brief, the rule-out standard applies to the second method of rebuttal but not the first. See also Bender, 782 F.3d at 141 (noting that the

---

[4] This conclusion compels us to reject Consolidation's related argument that it is entitled to an opportunity to develop further evidence in light of the revised rebuttal standard. Because the revisions to § 718.305(d) did "not substantively change the law," Antelope Coal Co., 743 F.3d at 1342, Consolidation was not deprived of a meaningful hearing under the APA or its right to due process. See Blue Mountain Energy v. Dir., OWCP, 805 F.3d 1254, 1262 (10th Cir. 2015) (rejecting argument that APA required ALJ to reopen record to allow employer to respond to findings of regulatory preamble because employer was aware of preamble's scientific findings and had ample opportunity to challenge them).

18

rule-out standard applies only to subsection (d)(2)(ii)). Legal pneumoconiosis is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." § 718.201(a)(2). And a disease "aris[es] out of coal mine employment" if it is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." § 718.201(b). Accordingly, an employer can rebut the presumption of legal pneumoconiosis under the rebuttal method set forth in § 718.305(d)(2)(i) by proving that the miner's lung disease was not "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Id.

The ALJ cited this regulatory definition in the introductory section of his order but used decidedly different language in analyzing whether Consolidation met its burden under subsection (d)(2)(i)(A). In concluding that Consolidation failed to establish rebuttal under that provision, the ALJ stated that the company's expert "ha[d] not ruled out any connection between coal-mine employment and Mr. Noyes's lung cancer." Similarly, he found that "the evidence [did] not rule out any connection between Mr. Noyes' emphysema and his coal-mine employment."

In affirming the ALJ's decision, the BRB considered only the lung cancer ruling. Although it did not expressly use the ALJ's "rule out" language, the BRB cited to Rose v. Clinchfield Coal Co., 614 F.2d 936 (4th Cir. 1980), in which the Fourth Circuit used the term "rule out" in an ambiguous manner. Specifically, the court in that case reasoned that a claimant's "failure to demonstrate . . . a [causal] relationship [between the miner's cancer and pneumoconiosis or between his cancer and his coal-mine employment] . . .

19

does not bar her recovery" because "it is the respondents' failure effectively to rule out such a relationship that is crucial." Id. at 939.

By citing Rose, the BRB's decision joins the ALJ's order in suggesting that an employer must rule out any causal relationship between a miner's "cancer and his coal mine employment" to establish rebuttal under § 718.305(d)(2)(i). But this standard is materially different from the requirement that an employer show a miner's lung disease was not "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." § 718.201(b). An employer may well show that a miner's lung condition was not "significantly related" to coal-mine employment but fall short of ruling out "any connection."

DOL urges us to treat the ALJ's reference to "rul[ing] out" as a mere colloquialism rather than a misapplication of the rebuttal standard. It relies on Consolidation Coal Co. v. Galusky, 648 F. App'x 316 (4th Cir. 2016) (unpublished), in which the Fourth Circuit concluded that the ALJ did not erroneously apply the rule-out standard to the rebuttal of pneumoconiosis because he used the phrase "rule out" merely "in its everyday sense." Id. at 320-21. In Galusky, however, the ALJ's references to "ruling out" came directly from the testimony of two doctors, which the ALJ quoted in his opinion, and thus it was clear he was not applying the rule-out standard. Id. at 321. The ALJ's decision in this case does not lend itself to the same inference. Moreover, the

20

"rule out" formulation was used twice in the decision—in the analyses of both lung cancer and emphysema.[5]

In Energy West Mining Company v. Estate of Blackburn, 857 F.3d 817 (10th Cir. 2017), we concluded that a similar alleged error would have been harmless because the rebuttal standard did not affect the ALJ's analysis of the medical evidence. See Gunderson v. U.S. Dep't of Labor, 601 F.3d 1013, 1021 (10th Cir. 2010) ("[W]e may overturn the ALJ's decision only if the error . . . prejudicially affected a substantial right of a party." (quotation and alteration omitted)). Rather than "base his decision on [the employer's] failure to rule out every connection between coal-mine dust and [the miner's] lung disease," the ALJ "reasoned that [the employer's] evidence was not credible." Energy West Mining Co., 857 F.3d at 832.

We cannot say the same in this case. The ALJ's comments below bear some resemblance to those at issue in Energy West Mining, as both ALJ orders criticized an expert for relying on generalities rather than the claimant's particular case. See id. However, in contrast to that case, the ALJ below did not make an express credibility finding, and he further equivocated in his assessment of the positions advanced by Consolidation's expert. See id. at 832-33. In discussing the competing expert opinions

---

[5] DOL also suggests that this issue was not raised in Consolidation's opening brief. We disagree. After quoting the ALJ's statement that the medical expert had not "ruled out any connection between coal-mine employment and Mr. Noyes' cancer," Consolidation argues that this analysis was "based on an erroneous interpretation of the 2013 rebuttal standard." It then quotes the proper standard under § 718.201(b) and argues that its expert showed Mr. Noyes' lung cancer was not "significantly related to, or substantially aggravated by" coal-dust exposure.

21

on the "connection between coal-dust exposure and the carcinoma of the lung," the ALJ stated that Consolidation's expert "ha[d] the better of th[e] professional dispute."

We think remand is the appropriate course under these circumstances. Although it is unfortunate that we must send this case to an ALJ for yet another round of review, our remand should not require a great deal of time or energy. To the extent the ALJ merely used the term "rule out" in its colloquial sense, proceedings should be very brief. If not, the ALJ will be required to reconsider the existing evidence under the proper standard.

## IV

We **GRANT** the petition for review and **REMAND** for further proceedings consistent with this opinion.

22