**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 20, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CONSOLIDATION COAL COMPANY,

    Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR; ROBERT THOMPSON,

    Respondents.

No. 16-9539
(Benefits No. 15-0342 BLA)
(Benefits Review Board)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

    Consolidation Coal Company seeks review of the award to Robert Thompson

by the Department of Labor (DOL) of miner's benefits under the Black Lung

Benefits Act (BLBA), 30 U.S.C. §§ 901-944.  Consolidation's principal legal

arguments on appeal were recently resolved against its position in *Consolidation*

*Coal Co. v. Director, OWCP (Noyes)*, 864 F.3d 1142, 1144 (10th Cir. 2017)

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(statutory presumption of 30 U.S.C. § 921(c)(4) applies to both clinical and legal pneumoconiosis; rebuttal standard of 20 C.F.R. § 718.305(d)(2)(ii), which requires employer to "rule out" any causal connection between pneumoconiosis and death, comports with Administrative Procedure Act; and rule-out standard is consistent with congressional intent of BLBA).[1]

Consolidation's remaining arguments all concern how the administrative law judge (ALJ) viewed the evidence in making his findings. But those findings are quite difficult to set aside. We do not reweigh the evidence; we merely ask whether the ALJ's decision is supported by substantial evidence, that is, whether there is "evidence in the record that a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1217 (10th Cir. 2009) (internal quotation marks omitted). By that standard, we must affirm. Another factfinder may have disagreed with the ALJ, but we cannot say that the decision here was unsupported by substantial evidence. It is unnecessary for us to recite all the evidence or explain how the ALJ could reasonably reject each argument made by Consolidation on appeal. We do, however, address what appear to be its chief arguments.

Consolidation challenges the use of DOL standards in evaluating four arterial blood-gas (ABG) studies. *See* 20 C.F.R. Pt. 718, App. C (DOL tables of arterial

---

[1] *Noyes* involved rebuttal of a claim for survivor's benefits under 20 C.F.R. § 718.305(d)(2)(ii), but essentially the same rule-out standard applies to the regulatory subsection concerning rebuttal of claims for disability benefits under 20 C.F.R. § 718.305(d)(1)(ii).

2

blood-gas levels that may establish total disability).  Under these standards, three of Mr. Thompson's ABG studies, including the most recent two, supported the ALJ's finding of disability.  Consolidation asserts that the DOL standards are not adequately adjusted for the altitude of the test site and are not adjusted at all for the age of the miner.  But this challenge fails because DOL regulations require use of the standards.  *See* 20 C.F.R. § 718.204(b)(2)(ii) (absent contrary probative evidence, evidence that meets the standards for ABG studies listed in appendix C "shall establish a miner's total disability").  Consolidation argues that a better standard is a "Predicted Normal Range" handwritten on one document in the record, without any explanation of where the numbers came from.  The ALJ properly refused to consider that standard.

Consolidation also argues that the ALJ's determination that Mr. Thompson was totally disabled was improperly based on medical opinions by several physicians and was refuted by the opinion of Dr. Lawrence Repsher, who concluded that Mr. Thompson did not have pneumoconiosis.  But the ALJ had significant reasons for doubting Dr. Repsher.

First, Dr. Repsher incorrectly interpreted the ABG studies, inexplicably concluding that they were nonqualifying, despite evidence indicating that three of the four studies qualified Mr. Thompson as totally disabled.  He also dismissed as an "outlier" an abnormal oxygen value from one ABG study, stating it "was probably the result of laboratory error."  Admin. R., Vol. 2, Emp'r Ex. 11 at 2.  But as the ALJ observed, he merely speculated that this abnormal result was an outlier, without

providing any explanation why, other than simply suggesting that it resulted from lab error.

Second, Dr. Repsher stated that Mr. Thompson did not give his full effort and cooperation when taking his pulmonary function tests. But the ALJ observed that Dr. Repsher "provide[d] no support for speculating [that Mr. Thompson] did not cooperate with the tests[,] and each of the [pulmonary function tests] specifically indicates that [Mr. Thompson] showed good effort." *Id.*, Vol. 1 at 152. Although one doctor indicated a test was "not optimally performed" and "the effort during the exhalation was poor," *id.*, Vol. 2, Emp'r Ex. 13 at 2, three other doctors indicated that Mr. Thompson gave "fair effort" and "good effort," *see id.*, Emp'r Ex. 12 at 2-3; *id.*, Claimant's Ex. 1 at 2; *id.*, Dir. Ex. 10 at 3-4.

Third, Dr. Repsher concluded that Mr. Thompson was "fully fit to perform his usual coal mine work or work of a similarly arduous nature," *id.*, Emp'r Ex. 4 at 4, but the ALJ noted that Dr. Repsher did not describe the exertional requirements of Mr. Thompson's work.

Fourth, Dr. Repsher attributed Mr. Thompson's low oxygen levels to cardiovascular disease, citing two abnormalities diagnosed by an October 2009 echocardiogram. The ALJ noted, however, that Dr. Repsher provided no explanation of how these abnormalities affected Mr. Thompson's ABG studies or otherwise caused his condition. Consolidation responds that the echocardiogram showed additional abnormalities while other evidence supports Dr. Repsher's finding, but as the ALJ indicated, Dr. Repsher did not cite any of this evidence, nor did he explain

4

how any of the abnormalities caused his pulmonary condition. Moreover, the ALJ observed that Mr. Thompson underwent multiple cardiac tests between 2004 and 2011, none of which required further treatment.

Fifth, Dr. Repsher indicated that he reviewed Mr. Thompson's medical records, including those of his primary care physician, and found no evidence of coal workers pneumoconiosis. But the ALJ observed that the primary care physician's records reflected "progressively worsening complaints of breathing difficulty," *id.*, Vol. 1 at 145, and "frequent references [to] respiratory and pulmonary conditions that [the primary care doctor] believed to be related to [Mr. Thompson's] coal mine employment," *id.* at 152. Consolidation asserts that the ALJ provided no supporting citations to medical records and that the primary care doctor recorded only two findings of cough attributable to sinusitis and rhinitis. The record belies this argument, however; the ALJ cited the primary care doctor's notes indicating that Mr. Thompson had "cough and congestion of several years' duration," had "been exposed to coal dust for over 30 years," and "in the past several months the cough and symptoms ha[d] worsened," *id.* at 123 (internal quotation marks omitted). Although these notes were based on Mr. Thompson's self-reporting, rather than observations by the physician, they constitute substantial evidence to justify discounting Dr. Repsher's opinion.

Notwithstanding these reasons for discounting Dr. Repsher's opinion, Consolidation contends that the ALJ improperly dismissed Dr. Repsher's opinion that "the alveolar-arterial oxygen gradient (A-a gradient)" was a "far more scientifically

5

valid" way of measuring alveolar function, and that Mr. Thompson's A-a gradient was normal. *Id.*, Emp'r Ex. 6 at 1. But the ALJ acknowledged there was support for using the A-a gradient. The reason the ALJ found this component of Dr. Repsher's opinion unhelpful was that he failed to explain how he determined that Mr. Thompson's A-a gradient was normal and he did not calculate Mr. Thompson's A-a gradient associated with ABG studies performed by other physicians.

Additionally, Consolidation asserts that Dr. Repsher's opinion was consistent with evidence that in 2011, Mr. Thompson was "working on top of a mountain summit on a daily basis and it was necessary [for him] to travel from high to low altitude on a daily basis." Pet'r Br. at 32. Consolidation suggests this evidence refutes Mr. Thompson's testimony that he could no longer climb stairs or mountains. But the ALJ properly rejected this argument as a mischaracterization of Mr. Thompson's testimony, which indicated that when he was younger, he did a lot of walking and hiking, but now he could no longer hike; he did not testify that his method of traveling up the mountain every day was by walking.

Finally, Consolidation contends that the ALJ erred in giving "much probative weight" to Dr. David James's opinion that Mr. Thompson was totally disabled. Admin. R., Vol. 1 at 146. It suggests Dr. James admitted that the pulmonary function tests revealed only mild abnormalities. That is correct. And the ALJ gave Dr. James credit for recognizing this fact. But he credited Dr. James's ultimate conclusion that Mr. Thompson was suffering from a totally disabling respiratory or pulmonary condition because it was based on "an extensive review of the exertional

6

requirements of" Mr. Thompson's job, recognition of the qualifying ABG studies, and consideration of Mr. Thompson's treatment records.  *Id.*

In sum, a careful review of the administrative record requires affirmance of the decision below.

The petition for review is denied.

Entered for the Court


Harris L Hartz
Circuit Judge
